Philip J. PLOURDE

v.

**SCOTT PAPER COMPANY.**

Supreme Judicial Court of Maine.

Argued Nov. 14, 1988.
Decided Jan. 12, 1989.

Stephen P. Sunenblick (orally), Sunenblick, Reben, Benjamin & March, Portland, for plaintiff.

William J. Kayatta, Jr. (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiff, Philip J. Plourde, appeals from a judgment of the Superior Court (Cumberland County; *Wernick, A.R.J.*) finding that the defendant, Scott Paper Company (hereinafter "Scott") through its S.D. Warren division, did not engage in unlawful employment discrimination under the Fair Employment provisions of the Maine Human Rights Act (MHRA) when it refused to hire Plourde because he had a physical handicap. 5 M.R.S.A. § 4572 (Supp.1988).

On appeal to this court, Plourde urges that the Superior Court erred in (1) concluding that Scott could invoke the safety defense set out in 5 M.R.S.A. § 4573(4) (1979); (2) finding that Scott met its burden under the safety defense by proving that Plourde had a fifty pound weight restriction and could not safely perform the duties of a "spare," and in any event, in finding that Scott had a factual basis in 1984 for concluding that Plourde could not lift more than fifty pounds without endangering his own health and safety; and (3) applying an erroneous legal standard in evaluating Scott's duty to accommodate the plaintiff and in upholding the absence of accommodation. Finding no error, we affirm the judgment of the Superior Court.

Scott's S.D. Warren division is a paper mill in Westbrook. The mill hires "spares" as entry-level employees in the various departments of its production unit. In accordance with Scott's collective bargaining agreement with the United Paperworkers International Union at the S.D. Warren mill, the position of "spare" is essentially the only production unit position which Scott is allowed to fill by hiring new applicants. Unlike all other job titles at Scott's Westbrook mill, the title of "spare" does not describe a specific job task. Rather, "spare" is the title given to the person assigned to each department shift as the floating substitute. When a permanent employee is on vacation, sick, or otherwise unavailable, that position is filled by an employee with equal or less seniority. The spare fills in the spot left vacant by the employee who is filling in for the absent or sick employee. Hence, which opening will exist on any given day is unpredictable; it depends on which employee is unavailable or filling in for one who is.

A spare later uses his or her accumulated seniority to bid into the permanent positions within a particular department when such positions become available. Consequently, there is no set time period that an employee serves as a spare before moving to a permanent job; it could be a week, a month or longer. In the interim, before a spare gets a permanent position, he or she is utilized on a short-term basis. Once permanently hired into a department, absent a major change in the department's organization caused by a layoff, a spare usually stays in that department.

In 1984, Plourde, then twenty-eight years old, applied at Scott's S.D. Warren mill for a position as a spare. Due to a surgical procedure known as a laminotomy, Plourde was handicapped, being subject to lifting limitations.

To help it determine whether Plourde, with his lifting limitations, could perform as a spare without endangering himself or others, Scott relied on Dr. Robert S. Ayerle, a physician specializing in industrial medicine and employed by Scott. After assessing the tasks required of a spare and reviewing Plourde's medical history, Dr. Ayerle advised Scott that he felt that Plourde could not work safely as a spare in the S.D. Warren mill. Consequently, Scott informed Plourde that his application for an entry-level spare job would not be further considered because Plourde was not capable of performing the job without endangering his health or safety.

In July of 1984, Plourde filed an administrative complaint with the Maine Human Rights Commission (MHRC) alleging unlawful discrimination. *See* 5 M.R.S.A.

§ 4611 (1979). The Commission found no discrimination and dismissed the complaint. 5 M.R.S.A. § 4612(2) (1979 & Supp.1988). In June of 1985, Plourde filed the within complaint in the Superior Court. *See* 5 M.R.S.A. § 4621 (Supp.1988). After a six day nonjury trial, the court held that Scott had not engaged in unlawful employment discrimination when it refused to hire Plourde because of his physical handicap. The court agreed with Scott on the applicability of the safety defense, 5 M.R.S.A. § 4573(4), and that Scott had met its burden under that provision. The court applied the "reasonable accommodations" provision in section 3.08(D) of the Employment Guidelines of the MHRC and held that Scott was not required to make an accommodation to hire Plourde. From that judgment, Plourde appeals.

## I.

■ In the Fair Employment provisions of the MHRA, it is specifically declared as the policy of the State of Maine that every individual has the civil right to secure employment without discrimination based on race, color, sex, physical or mental handicap, religion, age, ancestry or national origin. 5 M.R.S.A. § 4571 (1979). The statutes place on the plaintiff the burden of proving by a fair preponderance of the evidence that the alleged unlawful discrimination occurred. 5 M.R.S.A. § 4631 (1979); *see also Maine Human Rights Comm'n v. Canadian Pac. Ltd.,* 458 A.2d 1225, 1230 (Me.1983).

In this case, Scott admits to discrimination in that it refused to hire Plourde because of his physical handicap. To avoid liability under the MHRA, Scott, as an employer, must demonstrate that its discrimination was permitted under one of the statutorily defined exceptions to the MHRA's general prohibitions against discrimination.

The court found that Scott had met its burden of showing the safety defense exception to be applicable here.

■ The safety defense permits an employer to refuse to hire an employee who because of some handicap is "unable to perform his duties or to perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others." 5 M.R.S.A. § 4573(4).[1] To raise the safety defense, "an employer must first have performed 'individual assessments of the relationship between an employee's handicap and the specific and legitimate requirements of his job.'" *Rozanski v. A-P-A Transport, Inc.,* 512 A.2d 335, 340 (Me.1986) (quoting *Canadian Pac.,* 458 A.2d at 1234). Plourde argues that the court should not have allowed Scott to raise the safety defense because Scott did not perform an individual assessment of Plourde's capabilities.

The record demonstrates that Scott performed an individual assessment of Plourde's capabilities and did not reject Plourde's application as soon as his laminotomy was revealed. Dr. Ayerle traveled to Maine to tour the S.D. Warren mill and to update himself on the requirements of the entry-level spare job. He attempted to perform some of the jobs a spare is expected to perform. He further obtained and reviewed Plourde's medical history and reviewed a report by Dr. Lawrence Leonard, an orthopedic surgeon, whom he recommended examine Plourde. There is competent evidence in the record to support the conclusion that Scott performed an individual assessment of Plourde's handicap and the requirements of the job Plourde sought. *Maine Human Rights Comm'n v. City of South Portland,* 508 A.2d 948, 956

---

1. 5 M.R.S.A. § 4573(4) (1979) provides, in pertinent part, as follows:

    **4. Refuse to hire or discharge physically or mentally handicapped.** Nothing in this Act shall prohibit an employer from refusing to hire or discharging a physically or mentally handicapped employee, or subject an employer to any legal liability resulting from the refusing to employ or the discharge of a physically or mentally handicapped employee, where the employee, because of the physical or mental handicap, is unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others. ...

(Me.1986). The court properly allowed Scott to invoke the safety defense.

## II.

Plourde next argues that the court erred in its application of the safety defense, in finding that Plourde could not perform the duties of a spare with a fifty pound weight restriction, and that, in any event, in 1984, when Scott refused to hire Plourde, it had no basis for concluding that Plourde had such a weight restriction. We disagree.

### A.

■ The testimony at trial indicated that a spare is, in essence, a floating substitute within a department, subject to being required to fill any position within the department in which he or she is placed. There was evidence that the vacations and illnesses of employees holding permanent positions make it reasonably probable that a spare would perform work pertaining to a variety of the permanent positions within a department.

Although not every position filled by a spare requires heavy lifting, many do. There was much testimony covering the all-pervasive requirement of lifting and carrying cores, and turning, pushing and pulling rolls of paper. The cores are the tubes around which the paper is rolled and they weigh between thirty and eighty pounds. Once the paper is rolled onto the core, the rolls weigh from nine hundred pounds to four or five thousand pounds. The court found that there are enough heavy lifting jobs within the mill that it was "reasonably likely" that a spare would be called upon to fill a position requiring lifting in excess of Plourde's capacity to lift safely.[2] The court correctly pointed out that the more strenuous positions tended to be the lower-level positions more likely to

be filled by spares, as the permanent employees who held those jobs filled in for more senior employees absent because of sickness or vacation.

We review the court's finding for clear error, *Rozanski*, 512 A.2d at 341, and uphold those findings unless there is no competent evidence in the record to support them. *City of South Portland*, 508 A.2d at 956. There is competent evidence in the record to support the court's finding that, because of his physical handicap, Plourde could not lift more than fifty pounds without endangering himself, and that if he were to be employed as a spare in Scott's mill, he would be called upon frequently to lift more than fifty pounds.[3]

### B.

Although Plourde does not seriously dispute that the court's finding that he was subject to a fifty pound weight restriction was supported by evidence presented at trial, he contends that in 1984 Scott did not have a factual basis to conclude that Plourde was limited to such a lifting restriction. Plourde is correct that a refusal to hire or the firing of an employee because of a handicap must have a basis at the time of the rejection or dismissal. *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir.1985); *Kelley v. Bechtel Power Corp.*, 633 F.Supp. 927 (S.D.Fla.1986); *Bento v. I.T.O. Corp. of Rhode Island*, 599 F.Supp. 731 (D.R.I. 1986).

At trial, the evidence on Plourde's weight restriction was not limited to the actual information available to Scott in 1984. There was evidence, however, that allowed the court to determine that Scott, in refusing to hire Plourde, relied on Dr. Ayerle, who testified that in 1984 he was aware of the change in Plourde's weight restriction by Dr. Donald W. Wilson,

---

**2.** The court found that each department had jobs requiring the lifting of more than fifty pounds. Actually, the record indicates that the Product Quality Management Department did not have positions that required heavy lifting. However, during all of 1984, including the six months before and the six months after Plourde was turned down, Scott had opportunities to hire new workers in seven departments to fill entry-level spare positions. None of the spares

who filled these positions worked exclusively in the Product Quality Management Department.

**3.** Dr. Donald W. Wilson, Plourde's physician, testified that in his opinion, Plourde could perform safely the duties of a spare. The trial court was not required to and did not accept that testimony.

Plourde's physician, from fifty to one hundred pounds,[4] and that he, Dr. Ayerle, had a fifty pound weight restriction in mind when he recommended that Plourde's application for employment be rejected. The court's determination that Scott had a factual basis for the belief that, to a reasonable probability, hiring Plourde as a spare would cause deterioration to his health or endanger his safety is supported in the record. *Canadian Pac.*, 458 A.2d at 1234. Moreover, there is additional evidence in the record to show in hindsight that the 1984 decision by Scott was medically sound.

### III.

Finally, Plourde contends that the court placed an insufficient burden on Scott to reasonably accommodate Plourde's physical handicap. The court relied on section 3.08(D) of the Employment Regulations of the MHRC[5] and concluded that the proper inquiry to be made in determining if an employer is required to accommodate a handicap is "(1) what are the essential functions of the position that, because of his handicap, the employee, or the applicant, is unable to perform or unable to perform without endangering his own or another's health or safety, and (2) are there reasonable accommodations that can be made without undue hardship to the employer that would allow him to perform those essential functions?" The court placed the burden on the employer to demonstrate that no accommodation can be made or that "a reasonable accommodation would impose an undue hardship on the conduct of the employer's business."

Plourde contends that the court erred in failing to utilize the accommodation standard used in *Percy v. Allen*, 449 A.2d 337 (Me.1982). In *Percy*, we required the employer, the Maine Department of Corrections, to rearrange job responsibilities or engage in alternative practices, including possibly altering building structures, to accommodate the hiring of a female guard at the men's prison in Thomaston. *Id.* at 343–45. *See Dothard v. Rawlinson*, 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1087 (8th Cir.), *cert. denied* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). That broad obligation of accommodation outlined in *Percy*, however, is not applicable generally. Rather, it is very narrowly applied to gender discrimination cases where privacy interests, not of the persons alleging discrimination, but of third persons with whom they have contact, are asserted. The court correctly determined that the reasonable accommodation required of Scott in this physical handicap case, where the safety defense was properly invoked, was based on section 3.08(D) of the MHRC Employment Regulations, and differed from the accommodation required of an employer relying on the narrow defense of *bona fide* occupational qualification, *see* 5 M.R.S.A. § 4572(1) (Supp.1988),[6] and who asserted interests of privacy in third persons to justify discrimination based on gender. *See Canadian Pac.*, 458 A.2d at 1232 n. 12.

In distinguishing the accommodation required in *Percy* from that applicable in this case, the trial court looked to federal law

---

4. In April of 1981, Dr. Wilson wrote in his progress notes that Plourde should never lift one hundred pounds again, but could, with improvement, "lift as much as 50 pounds." The fifty pound restriction was later adopted by Dr. Wilson as a "permanent" restriction. After Dr. Wilson became aware of Plourde's application for employment with S.D. Warren, he increased the restriction to one hundred pounds.

5. Section 3.08(D) of the Maine Human Rights Commission Employment Regulations provides as follows:

It is an unlawful employment practice for an employer to fail or refuse to make reasonable accommodations to the physical or mental

limitations of otherwise qualified employees or applicants for employment, unless the employer can demonstrate that a reasonable accommodation does not exist or that an accommodation would impose an undue hardship on the conduct of the employer's business.

6. The *bona fide* occupational qualification defense is very narrowly construed, and when applicable, permits an employer "to discriminate against an entire class of employees without requiring any individual assessment of each employee's abilities." *Maine Human Rights Comm'n v. Canadian Pac. Ltd.*, 458 A.2d 1225, 1231–32 (Me.1983).

**1262** ■

for guidance. In the field of employment discrimination we frequently adopt the analysis of analogous federal law by federal courts to the extent we find it persuasive. *Maine Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me.1979); *Maine Human Rights Comm'n v. Local 1361*, 383 A.2d 369, 375 (Me.1978).

The trial court was persuaded, as are we, by the analysis used in *Jasany v. United States Postal Service*, 755 F.2d 1244, 1250 (6th Cir.1985), *Prewitt v. United States Postal Service*, 662 F.2d 292, 310 (5th Cir. 1981), and *Bento*, 599 F.Supp. at 745, requiring the employer to take reasonable steps to accommodate the handicap of a potential employee, but not requiring the employer to eliminate essential functions of the job.[7]

The court here made the correct inquiry and determined that, even with reasonable accommodation, Plourde could not perform the essential functions of the position of spare within the Scott mill.

The essence of the spare system is its flexibility. The continuous operation of the mill depends on the spares stepping in and performing the jobs left vacant because of employee illness or vacation. The court found that many of the positions throughout the mill require lifting in excess of Plourde's fifty pound limitation and that a spare frequently would be required to perform jobs that had a lifting requirement in excess of that limitation. The court concluded that because of the system's need for flexibility, lifting in excess of fifty pounds was an essential part of a spare's job and that a spare who could not perform lifting requirements in excess of fifty pounds could not perform an essential function of a spare position. To alter the duties of a spare to eliminate the lifting requirement, an accommodation urged by

Plourde, would, the court found, "eliminate the essence of the spare's function[ ]." Those findings are supported by evidence in the record and are not clearly erroneous. *City of South Portland*, 508 A.2d at 956.

■ Once the employer presents credible evidence that reasonable accommodation is not possible or practicable, the employee has the burden of coming forward with evidence suggesting that an accommodation may in fact be made. *Prewitt*, 662 F.2d at 310. Although Plourde contends that he met that burden, the court's conclusion that Scott could not accommodate Plourde without undoing the essential nature of the spare position, and that Scott met its burden in justifying the absence of reasonable accommodation is not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.

7. The trial court also noted that federal regulations defining "qualified individual with handicaps" within the meaning of the Federal Rehabilitation Act, 29 U.S.C.A. § 794, uses language of a person who, "with or without reasonable accommodation can perform the essential functions of the position in question without endangering the health or safety of the individual or others." 29 C.F.R. § 1613.702(f). Although section 3.08(1) of the Maine Human Rights Commission Regulations does not include the words "essential function of the position," the court reasonably concluded that "the 'otherwise qualified employees or applicants for employment' referred to in section 3.08(1) of the Employment Guidelines are those individuals who are capable, or who can be made capable with reasonable accommodation, of performing the essential functions of the position."