William KRENNERICH, Plaintiff,

v.

INHABITANTS OF the TOWN OF BRISTOL, Town of Bristol Parks and Recreation Department, Bristol Parks and Recreation Commission, Shirley Geyer, John Allan, and Nancy Johanson, Defendants.

Civil No. 95–352–P–C.

United States District Court,
D. Maine.

Oct. 24, 1996.

Francis Jackson, Portland, ME, for Plaintiff.

Thomas F. Monaghan, Christopher C. Dinan, Monaghan, Leahy, Hochadel & Libby, Portland, ME, Ervin D. Snyder, Snyder & Jumper, Wiscasset, ME, for Defendants.

*MEMORANDUM OF DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

The Court now has before it Defendants Inhabitants of the Town of Bristol, Town of

Bristol Parks and Recreation, Bristol Parks and Recreation Commission, Shirley Geyer, John Allan, and Nancy Johanson's Motion for Summary Judgment (Docket No. 4). Plaintiff William Krennerich has alleged claims for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (Count I), his federal Civil Rights, 42 U.S.C. § 1983 (Count II), and emotional distress. Defendants move for summary judgment on all counts of Plaintiff's Complaint. For reasons that will be explained below, Defendants' Motion for Summary Judgment will be granted in part and denied in part.

## I. UNDISPUTED FACTS

In May 1992 the Bristol Parks and Recreation Commission hired Mr. Krennerich as the Park Manager. Affidavit of John Allan ¶ 2; Affidavit of William Krennerich ¶ 2. The Park Manager oversees the operations of the Town's five parks: Pemaquid Point Lighthouse; Pemaquid Beach Park; the swimming hole at Bristol Mills; Rock School House; and the Public Facility for boat launching at Round Pond.[1] Allan Aff. ¶ 1. Mr. Krennerich was the first full-time, year-round Park Manager and, as such, Krennerich was the only full-time, year-round employee for the Bristol Park Commission. Allan Aff. ¶ 5; Krennerich Aff. ¶¶ 2, 4. The Park Manager's duties vary with the time of year. From Memorial Day until Labor Day the Park Manager's duties include: supervising eight to ten seasonal employees; raking the beaches each morning; overseeing and participating in mowing of lawns, landscaping; repairing and maintaining the buildings, fences and decks. Krennerich Deposition Ex. 1. Immediately after the parks close in the fall and just prior to opening the parks in the spring, the Park Manager has additional duties such as storing and replacing picnic tables and trash receptacles. Krennerich Dep. at 30–31; Krennerich Dep. Ex. 1. All of these activities involve physical exertion. After the parks closed each Fall, Krennerich was responsible for checking each facility on a regular basis for damage or potential problems. Krennerich Dep. Ex. 1.

In December 1993 Mr. Krennerich was injured when he lifted a compressor weighing approximately 200 pounds onto a truck. Krennerich Dep. at 26; Krennerich Aff. ¶ 7. Immediately thereafter, he experienced an "excruciating sharp pain" in his back and down his hip and leg. Krennerich Dep. at 26. On February 28, 1994, Mr. Krennerich was examined by Dr. Richard Phelps. Krennerich Dep. at 38. Mr. Krennerich informed John Allan,[2] the Bristol Parks Commissioner, of his condition the same day. Krennerich Dep. at 39; Allan Dep. at 18. Mr. Krennerich's pay was stopped on March 4, 1994, and the notation "final" was made on his timecard.[3] Krennerich Aff. ¶ 8.

On March 8, 1994, Krennerich attended a meeting of the Commission. Krennerich Aff. ¶ 9. The events that transpired at the meeting are in dispute. The next day, March 9, 1994, Mr. Krennerich sent a letter to the Park Commission stating that he had a "multilevel degenerative disk disease." and that he "[could] not continue at my job or any work which would consist of bending, twisting, lifting, using vibrating tools or riding any equipment which would cause vibration." Krennerich Dep. Ex. 2; Krennerich Aff. ¶ 17. Mr. Krennerich sent an additional letter on March 10, 1994, to the Commission stating that he wanted a letter "saying due to my present condition I'm unable to do what is expected of me and my duties with the Parks. I know I can't anymore and I understand the situation as it stands." Krennerich Dep. Ex. 4.

---

1. The operating budget of the Bristol Parks Commission is approximately $100,000, which is raised through the payment of seasonal passes and entrance fees to the five park sites. Allan Aff. ¶ 8.

2. Shirley Geyer and Nancy Johanson were the other two members of the Bristol Parks Commission at the time the events of this case took place.

3. The Court notes that the record does not include a copy of the timecard. In addition, although Mr. Krennerich testified that he filed for and received veteran's disability and social security benefits after he stopped working for the Park Commission, Krennerich Dep. at 58–59, there is no evidence in the record when either of those events occurred. Evidence of the dates of those events may assist the trier of fact in making a determination of when Mr. Krennerich's employment ceased.

## II. DISCUSSION

The Court of Appeals for the First Circuit has recently explained once again the workings and purposes of the summary judgment procedure:

Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)....

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists. *See National Amusements [v. Town of Dedham]*, 43 F.3d [731,] 735 [ (1st Cir.1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, [he] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc.]*, 895 F.2d [46,] 48 [ (1st. Cir. 1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Build-ings]*, 960 F.2d [200,] 204 [ (1st Cir.1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs-Ryan [v. Smith]*, 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina-Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding....

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

### A. Americans with Disabilities Act (Count I)

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). To sustain a claim under the ADA, a plaintiff must establish:

(1) [T]hat he is a disabled person within the meaning of the Act; (2) that [he is qualified, that is,] with or without reasonable accommodation he is able to perform the essential functions of his job; and (3) that the employer discharged him in whole or in part because of his disability.

*Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 (1st Cir.1996). As to the first element of the ADA inquiry, there is no disagreement regarding Mr. Krennerich's disability.[4] Re-

4. "The term 'disability' means, with respect to an individual: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of

garding the third element of a successful ADA claim, there is an issue of fact which the Court addresses *infra* section II.B.1. Nevertheless, ·the Court will grant Defendants Motion for Summary Judgment because it concludes that Plaintiff is unable to satisfy the second element of the ADA inquiry.

### 1. Qualified Employee

Defendants contend that Mr. Krennerich is not a "qualified individual with a disability" because he is unable to perform the essential functions of the job and no reasonable accommodation would permit him to perform those functions. Motion for Summary Judgment by Town of Bristol Defendants (Docket No. 4) at 6. Plaintiff responds that he is capable of performing as the Park Manager if reasonable accommodation is made for his disability by the Town.

An employee is "qualified" if he satisfies "the requisite skill, experience, education and other job-related requirements" of the employment position." 29 C.F.R. § 1630.2(m). The ADA requires that in order for someone to be considered a "qualified individual with a disability," he must be able to perform the "essential functions" of the job. 42 U.S.C. § 12111(8). Regulations of the Equal Employment Opportunity Commission state that "essential functions" are "fundamental job duties" and not "marginal·functions of the position." 29 C.F.R. § 1630(n). In determining whether a function is "essential," the Court must consider whether the position in question exists to perform that function, 29 C.F.R. § 1630.2(n)(2)(i), whether the employer has only a limited number of employees available among whom he can distribute this function, 29 C.F.R. § 1630.2(n)(2)(ii), and whether the employer believes the function is "essential", 29 C.F.R. § 1630.2(n)(3)(i). The Court must also consider the employee's job description and the consequences of not requiring the employee, to perform the function. 29 C.F.R. §§ 1630.2(n)(3)(ii) and (iv).

In the instant case, Mr. Krennerich has admitted that raking beaches, repairing and maintaining buildings, fences, and decks, mowing lawns, and landscaping were part of his duties as the Park Manager. Krennerich's job description, which he composed, includes the performance of numerous other physical activities. Krennerich Dep. Ex. 1. As Mr. Krennerich explains in his March 9, 1994, letter to the Park Commission:

> I had to open up Parks which consisted of lifting and moving picnic tables, trash can holders (wooden w/90 lb. concrete blocks in base), ladder work w/ twisting and bending on ladder, removing dead trees, water soaked logs from beach area. In Fall I had work projects which consisted of building 100' pressure treated fence, also building handicapped deck w/40' 4' wide ramp. In building these projects I had to lift and carry 16' 4x4 beams, 12'–14' 2x10 boards. I also had to move large rocks (lifting or pushing)[.]

Krennerich Dep. Ex. 2. Mr. Krennerich further notes that at times as Park Manager he had to "stand and sit for eight hours a day selling tickets, and drive a tractor for two to four hours each morning, all of which caused him "great pain[ ]." Krennerich Dep. Ex. 2.

■ Krennerich disputes Defendants' statement of material fact which outlines his job duties, claiming that his only duties are oversight of other employees from May until September and checking on the parks for damage, or potentially damaging conditions, from September until May. Plaintiff's Statement of Undisputed Material Facts in Opposition to Motion for Summary Judgment (Docket No. 10) ¶ 9. Although Krennerich claims otherwise, the record is clear, leaving no genuine issue of fact that his "essential" duties as Park Manager include physical components which he is no longer able to perform. Specifically with regard to his job duties from September until May, it is undisputed in the record that Krennerich's inability to perform tasks which require even the modest amount of physical exertion renders it impossible for him personally to tend to damaged park property or a potentially damaging condition. Since the Park Manager is the only year-round park employee, no other employee is even available to assist with this function. By his own admission, Krennerich

such impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

is unable to perform any work which would consist of bending, twisting, lifting, use of vibrating tools or riding any equipment which would cause vibration. Krennerich Dep. Ex. 2; Krennerich Aff. ¶ 17. All of these movements or activities are necessary to perform the essential functions of the Park Manager position from May until September. Thus, the Court concludes that Mr. Krennerich is not "qualified" without a reasonable accommodation.

### 2. Reasonable Accommodation

Under the ADA, it is unlawful for an employer not to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless he can demonstrate that the accommodation would be an "undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5). Krennerich contends that he could perform his job with reasonable accommodations from the Park Commission. Krennerich suggests that he could continue to do his job if the Park Commission would hire someone on an hourly basis to do the physical aspects of his job. Defendants respond that in order to accommodate Mr. Krennerich, the Park Commission would need to hire an additional employee to perform the physical tasks which would otherwise be performed by the Park Manager and that doing so would change the essential functions of the Park Manager's job.[5] Allan Aff. ¶ 3, 6.

■ In order to accommodate an employee, the law does not require an employer to change the essential functions of the job. See Gilbert v. Frank, 949 F.2d 637, 644 (2d Cir.1991); Plourde v. Scott Paper Co., 552 A.2d 1257, 1262 (Me.1989); 29 C.F.R. pt. 1630 App. § 1630.2(o). Courts that have considered this issue have held that an employer is not "required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." Gilbert v. Frank, 949 F.2d at 644 (holding that an employee's request that employer assign co-workers to assist him in physically demanding aspects of his job which he could no longer perform was not a request for reasonable accommodations since it sought the elimination of essentials of his job); Bradley v. University of Texas M.D. Cancer Ctr., 3 F.3d 922, 925 (5th Cir. 1993) (holding that HIV-infected surgical technician could not be reasonably accommodated because essential function of being in the operative field would have had to be eliminated); Treadwell v. Alexander, 707 F.2d 473 (11th Cir.1983) (holding that an accommodation in the nature of assigning additional workers from a limited staff to perform plaintiff's duties was an undue burden employer need not undertake); Reigel v. Kaiser Found. Health Plan, 859 F.Supp. 963, 973 (E.D.N.Y.1994) (disabled physician's request to accommodate her by permanently assigning a physician's assistant to work with her was unreasonable); Mauro v. Borgess Medical Center, 886 F.Supp. 1349, 1354 (W.D.Mich.1995) (hospital not required to accommodate an HIV-positive operating room technician by adding another person to his surgical team to assist when the employee's duties infrequently require him to place his hands upon and into a patient's surgical incision to provide room and visibility for the surgeon).

■ As discussed above, Krennerich admits that he is unable to perform "any work which would consist of bending, twisting, lifting, using vibrating tools or riding any equipment which would cause vibration." Krennerich Dep. Ex. 2; Krennerich Aff. ¶ 17. Being able to perform these physical movements is essential to the position of Park Manager. Although the parties disagree substantially

---

**5.** Although the parties agree that it would be necessary to hire an individual to perform the physical tasks which Mr. Krennerich is unable to perform, they disagree markedly over how many hours an individual would be needed to assist Mr. Krennerich and the cost of such assistance to the Park Commission. Mr. Krennerich alleges that an hourly employee could provide sufficient assistance for approximately $2,000–$3,000.

Krennerich Aff. ¶ 16; Plaintiff's Memorandum in Opposition to Motion for Summary Judgment. On the other hand, John Allan estimates that an additional full-time employee would be necessary at a cost of $25,000. Allan Aff. ¶ 7. This would be a 25% increase in the Park Commission's current operating budget. Allan Aff. ¶ 10. The Court concludes that this factual dispute is not material to the outcome of Plaintiff's ADA claim.

over just how much the type of accommodation suggested by Mr. Krennerich would cost the Park Commission, the record shows without dispute that in order to make an accommodation for Mr. Krennerich the essential functions of the job would need to be altered beyond recognition and would require the Park Commission to hire someone to substitute for Mr. Krennerich. Neither option is contemplated as a reasonable accommodation under the ADA. *See Reigel*, 859 F.Supp. at 973 ("The law does not require an employer to hire two individuals to do the tasks ordinarily assigned to one."). Mr. Krennerich suggests that accommodation for his disability could be accomplished by restricting his duties to supervisory and administrative functions. Limiting his duties to supervision and administration could only be accomplished by delegating the majority of his job duties and ultimately changing the essential functions of the Park Manager position. Moreover, where, as here, there is only one employee present to perform the job function from September until May, delegation simply is not possible. Consequently, the Court will grant Defendants' Motion for Summary Judgment on Count I.

### B. Civil Rights (Count II)

▮ Plaintiff claims that his civil rights were violated because he was fired without the requisite procedural due process. Under 42 U.S.C. § 1983, a claim for relief may be asserted only against those persons who, "under color of law" act to deprive another of "rights, privileges, or immunities" secured by either the United States Constitution or federal statutes. 42 U.S.C. § 1983. Krennerich has sued both the Town and the individual Park Commissioners for violation of his civil rights.

#### 1. Individual Defendants

▮ The Court of Appeals for the First Circuit has set forward the standard to assess liability for governmental officials under § 1983 as follows:

(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of the rights, privileges or immunities, secured by the Constitution or laws of the United States. There are two aspects to this second inquiry: (1) there must have been a *deprivation* of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been *causally connected* to the deprivation.

*Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989) (citations omitted). Plaintiff contends that he has been denied property without due process of law in violation of § 1983. Defendants respond by claiming that Plaintiff did not have a property interest in his employment, that he was not deprived of his employment by the Park Commission, and that even if he were deprived of his protected employment by the Commission his § 1983 claim must fail because he did not avail himself of the postdeprivation state law remedy. Motion for Summary Judgment by Town of Bristol Defendants at 13–17. The Court will address each of Defendants' arguments in turn.

▮ In a case such as this, in order to state a cognizable claim for a violation of due process pursuant to 42 U.S.C.A. § 1983, a plaintiff must show a deprivation of a constitutionally protected property or liberty interest. *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978); *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 300 (Me.1988). In Maine a property interest in continued employment may be established by contract, statute, or by proof of an objectively reasonable expectation of continued employment. *Mercier v. Town of Fairfield*, 628 A.2d 1053, 1055 (Me.1993) (citing *Hammond v. Temporary Compensation Review Bd.*, 473 A.2d 1267, 1271 (Me.1984)). *Cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (state law determines whether a property interest exists). If a person is hired for a government position which is clearly terminable at the will of his superiors, the employee does not have a property interest in the position. Thus, a public employee has no property interest sufficient to invoke the Fourteenth Amendment's due process guarantees unless the applicable statute or employment contract

requires that employment may be terminated only on a showing of "cause." *See Board of Regents v. Roth*, 408 U.S. 564, 578, 92 S.Ct. 2701, 2709–10, 33 L.Ed.2d 548 (1972); *Arnett v. Kennedy*, 416 U.S. 134, 167 n. 2, 94 S.Ct. 1633, 1651 n. 2, 40 L.Ed.2d 15 (1974).

██ Defendants argue that Plaintiff is merely an at will employee of the Parks Commission and, thus, is not entitled to the protections of due process. Motion for Summary Judgment by Town of Bristol Defendants at 14. Specifically, Defendants recite the statute authorizing the appointment of municipal officials and providing that those officials may be removed only for cause. Because the position of Park Manager is not required by the statute, Defendants argue, by negative inference, that Krennerich is not entitled to just-cause protection. *See* 30–A M.R.S.A. § 2601. Although Defendants may be correct that no statutory just-cause protection is afforded, it does not necessarily follow that Plaintiff is not entitled to such protection. Krennerich's affidavit states that in the fall of 1992, his contract was renegotiated, changing the Park Manager position to year-round employment. Krennerich Aff. ¶ 4. Krennerich's affidavit also states: "At that time I was hired … with the understanding that they wanted me to stay indefinitely and that my job was expected to continue indefinitely. My discussions were primarily with then Commissioner Robert Spade. It was agreed that I would be reviewed annually and terminated only for cause." Krennerich Aff. ¶ 4. Defendants do not present any evidence to refute Krennerich's claim on this point. Therefore, on this record, the Court finds that Krennerich had a reasonable expectation of continued employment, and with that expectation a protected property interest. *See Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (the absence of a formal contract does not bar a professor from asserting he had tenure by mutual understanding).

██ Once it has been determined that the due process clause applies, the remaining question is, "What process is due?". *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In this regard the United States Supreme Court has generally held that due process requires some kind of a hearing *before* a government deprives a person of property. *See, e.g., Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493. Krennerich does not pinpoint exactly what day he believes he was terminated, however, the thrust of his argument indicates that he thinks he was terminated at the very latest by his check on March 4 noting "final." Defendants contend that Krennerich resigned by his March 9 and 10 letters to the Park Commission. The record is rather confusing regarding the events which transpired and the associated conversations of the parties.[6] On this record, the Court must conclude that there are issues of fact regarding whether Krennerich was terminated or he resigned and when that event finally concluded his employment with the Town.

Alternatively, Defendants contend even if Mr. Krennerich has been deprived of his protected employment by the Commission, he was afforded sufficient notice and opportunity to be heard prior to the deprivation to satisfy procedural due process. Motion for Summary Judgment by Town of Bristol Defendants at 13–17. As discussed above, it is quite unclear exactly how the events from February 28 through March 10 unfolded. Therefore, a genuine issue of material fact exists on this point as well.

Defendants also argue, in the alternative, that Plaintiff's § 1983 claim must fail because Mr. Krennerich did not avail himself of the postdeprivation state law remedy. Specifically, Defendants state that the Law Court has held that a "governmental employee whose employment has been terminated is entitled to seek redress pursuant to Maine Rule of Civil Procedure 80B." Motion for Summary Judgment by Town of Bristol Defendants at 15–16. Implicit in Defendants argument is that Mr. Krennerich was termi-

---

**6.** The record does not reveal how and when either Mr. Krennerich became aware he was terminated or how and when the Park Commissioners received notice of Mr. Krennerich's resig-

nation. It is also unclear why Mr. Krennerich would write a resignation type letter, like the March 9 and 10 letters, if, as he alleges, he had already been terminated.

nated and that he was afforded no pretermination process. With these assumptions in mind, the Court nevertheless finds that Defendants misunderstand the applicable procedural due process case law.

"When a deprivation of a property interest is occasioned by *random and unauthorized* conduct by state officials ... the [Supreme] Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state." *Lowe v. Scott,* 959 F.2d 323 (1st Cir.1992) (emphasis added) (citing *Zinermon v. Burch,* 494 U.S. 113, 128–130, 110 S.Ct. 975, 984–85, 108 L.Ed.2d 100 (1990)). Through its cases the Court has attempted to define the types of conduct which are "random and unauthorized." In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Court was faced with a claim by a prisoner who alleged that the negligent loss of a "hobby kit" which he had ordered by mail constituted a deprivation of property without due process. Finding that the prisoner did not have a § 1983 action, the Court stated:

> [T]he respondent has not alleged a violation of the Due Process Clause of the Fourteenth Amendment. Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure. There is no contention that the procedures themselves are inadequate nor is there any contention that it was practicable for the State to provide a predeprivation hearing. Moreover, the State of Nebraska has provided respondent with a means by which he can receive redress for the deprivation. The State provides a remedy to persons who believe that they have suffered a tortious loss at the hands of the State.

*Id.* at 543, 101 S.Ct. at 1917. Later, in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that the adequacy of state postdeprivation tort remedies precluded a § 1983 action by a prisoner whose property was intentionally destroyed by a prison guard during a search of his cell. In both *Parratt* and *Hudson,* the value of predeprivation safeguards would have been negligible in preventing the kind of deprivation at issue. Thus, the state-provided postdeprivation remedies were sufficient.

Most recently, however, in *Zinermon v. Burch,* 494 U.S. at 128–130, 110 S.Ct. at 984–85, the Court held that the plaintiff's § 1983 claim was viable since Florida could have adopted procedures that would have ensured that hospital officials conducted an appropriate examination of patients' competency prior to either voluntary or involuntary admission. In *Zinermon,* the plaintiff brought a claim for deprivation of liberty without due process against members of the Florida State Hospital who admitted him to the hospital as a voluntary mental patient. *Id.* at 115, 110 S.Ct. at 977–78. It was alleged that at the time of his admission, the plaintiff was in no condition to have executed forms indicating that he was requesting voluntary admission. The plaintiff argued that his right to procedural due process was violated because the involuntary placement procedure was not followed by the hospital. *Id.* at 118–124, 110 S.Ct. at 979–82. The state responded by arguing that the plaintiff failed to state a claim under § 1983 because its conduct was random and unauthorized.

Finding the rule of *Parratt* and *Hudson* equally applicable to claims involving deprivations of liberty and property, *id.* at 131–32, 110 S.Ct. at 986–87, the *Zinermon* Court held that predictable deprivations which flow from authorized conduct of state actors are compensable under § 1983. The *Zinermon* Court dismissed the state's contention that it could not have been prevented from making random and unauthorized errors during the admission of mental patients. Instead, the Court found that the hospital could have performed an examination prior to a patient's admission to determine the appropriate admission status. Distinguishing *Parratt* and *Hudson,* the Court stated that those suits "represent a special case of the general *Mathews v. Eldridge,* [424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ] analysis, in which postdeprivation tort remedies are all the pro-

cess that is due, simply because they are the only remedies the State could be expected to provide." *Id.* 494 U.S. at 128, 110 S.Ct. at 984. In reaching its conclusion, the Court laid out three preconditions to the application of the *Parratt/Hudson* doctrine: the alleged deprivation must truly have been unpredictable or unforeseeable; predeprivation procedures were ineffective to control the state actor's conduct; and the state actor's conduct was unauthorized. *Id.* at 136–38, 110 S.Ct. at 988–90. In this case, none of the above criteria are met.

 First, it could easily be anticipated that the Town of Bristol Park Commission would need to terminate someone at some point, and the record indicates that the Park Commissioners are not aware of any procedure, written or otherwise, in which the Town of Bristol has outlined the proper steps to follow before an employee is terminated. Johanson Dep. at 7; Allan Dep. at 17. Second, predeprivation procedures could reasonably have been afforded to Mr. Krennerich. Moreover, those procedures would be highly effective to prevent the Park Commissioners from the type of erroneous deprivation alleged here. Finally, the record indicates that the Park Commissioners are authorized to make this type of employment decision. Johanson Dep. at 7; Allan Dep. at 13–14. It is this type of predictable deprivation resulting from authorized governmental conduct that is recognizable under § 1983. After reviewing the applicable case law, the Court concludes that no amount of postdeprivation process will satisfy the requirements of the Due Process Clause where, as is alleged here, a public employee, subject to dismissal only for just cause, is terminated without oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story prior to their discharge. *See Rivera–Ruiz v. Gonzalez–Rivera,* 983 F.2d 332, 334 (1st Cir.1993) ("The Due Process Clause of the Fourteenth Amendment guarantees public employees with a property interest in continued employment the right to pre-termination hearing." (citing *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493)); *Ortega–Rosario v. Alvarado–Ortiz,* 917 F.2d 71, 73 (1st Cir.1990). As the Court stated

above, it is unclear if Mr. Krennerich was provided with this type of process prior to the conclusion of his employment, but if Mr. Krennerich can prove he was terminated he should have been given some pretermination process. Accordingly, the Court will deny the individual Defendants' Motion for Summary Judgment on Count II.

### 2. Official Capacity

 Governmental entities are liable under § 1983 only for constitutional violations committed pursuant to a governmental policy or custom. *Monell v. Department of Social Serv. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The Supreme Court has emphasized that a governmental entity may be held liable, "only where the municipality *itself* causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under section 1983." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1202–03, 103 L.Ed.2d 412 (1989) (citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. at 2037–38). Thus, Plaintiff must show that a policy or custom of the governmental entity caused the unconstitutional harm. *Santiago v. Fenton,* 891 F.2d 373, 381 (1st Cir.1989).

 Mr. Krennerich cannot meet the § 1983 test for municipal liability. Even if the Town of Bristol terminated his employment improperly, Krennerich has failed to identify any conduct that could constitute a custom, policy, or practice of the Town of Bristol which lead to the deprivation him of his employment as the Park Manager. Krennerich makes two distinct arguments on this point. First, he asserts that the record supports two instances where a municipal employee was terminated without notice or hearing. Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 7. The Court assumes that the two instances to which Plaintiff refers are the ones he describes in his affidavit: "Matthew Nutting and a female summer employee whose name I cannot remember." Krennerich Aff. ¶ 19. Both employees, Krennerich alleges, were terminated involuntarily without being given

notice or an opportunity for a hearing. Krennerich Aff. ¶ 19; Allan Dep. at 7. There is no evidence in the record that those employees had just-cause protection entitling them to any due process prior to termination. Therefore, these allegations cannot serve as a basis for municipal policy or custom of terminating employees in violation of the Fourteenth Amendment.

 Krennerich also argues, citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), that because a policy or custom can be demonstrated by only a single instance of conduct, his situation provides a sufficient basis to find the existence of a municipal policy or custom. Although *Pembaur* did make it clear that "municipal liability may be imposed for a single decision by municipal policymakers," liability attaches "only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481, 106 S.Ct. at 1299. The mere fact that an officer had discretionary and final authority to make the decision in question does not necessarily mean that he was a "policymaker" with respect to that decision. *Id.* at 483, 106 S.Ct. at 1300 n. 12. While Allan and the other Park Commissioners have the discretionary authority to hire and fire park employees, Johanson Dep. at 7; Allan Dep. at 7, there is no evidence in the record to support the conclusion that any of these individuals are responsible for establishing the Town's overall employment policy. Plaintiff does not even assert that the Park Commissioners are the ultimate policymakers for the Town of Bristol. Accordingly, the Court will grant Defendant's Motion for Summary Judgment on Plaintiff's § 1983 claim against the Inhabitants of the Town of Bristol, the Town of Bristol Parks and Recreation Department, and the Bristol Parks and Recreation Commission, leaving only Shirley Geyer, John Allan, and Nancy Johanson in their individual capacities.

### C. Emotional Distress (Count III)

#### 1. Intentional Infliction of Emotional Distress

Count III of Krennerich's Complaint—although hardly a model of clarity in pleading—alleges that the discriminatory firing caused him severe emotional distress. The Court will assume that Plaintiff intends to state a cause of action for intentionally and negligently inflicted emotional distress.

 In order to recover for intentional infliction of emotional distress, Plaintiff must establish that:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, *Restatement (Second) of Torts* § 46, Comment i; (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community," *Restatement (Second) of Torts* § 46, Comment d; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." *Restatement (Second) of Torts* § 46, Comment j.

*Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me.1979); *accord Gray v. State*, 624 A.2d 479, 484 (Me.1993). "[I]t is for the Court to determine, in the first instance, whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous [as] to permit recovery...." *Dempsey v. National Enquirer*, 702 F.Supp. 927, 930 (D.Me.1988) (quoting *Rubin v. Matthews International Corp.*, 503 A.2d 694, 699 (Me. 1986)). Krennerich's claim for emotional distress is based solely on the allegation that Defendants wrongfully terminated him and did so without due process. Assuming that Plaintiff proves that he was terminated without due process, Defendants are nevertheless entitled to summary judgment because Plaintiff's claim cannot satisfy the legal standard for intentional infliction of emotional distress. The evidence generates no genuine issue that the Park Commissioner's conduct was so " 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community.' " *Vicnire*, 401

A.2d at 154 (quoting *Restatement (Second) of Torts* § 46, Comment d). Thus, Defendants' Motion for Summary Judgment on Count III must be granted insofar as it alleges intentional infliction of emotional distress.

### 2. Negligent Infliction of Emotional Distress

 Turning to the claim for negligent infliction of emotional distress, the Court finds that Defendants are also entitled to summary judgment on this claim. In order to prevail on a claim for negligent infliction of emotional distress, Plaintiff must show that Defendants were negligent; that Plaintiff suffered emotional distress that was a foreseeable result of Defendants' negligence; and that Plaintiff suffered severe emotional distress as a result of Defendants' negligence. *Bolton v. Caine*, 584 A.2d 615, 617–18 (Me.1990); *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282 (Me.1987).

Defendants contend that an action for negligent infliction of emotional distress as a result of a breached employment contract is not recognized in Maine. Motion for Summary Judgment by Town of Bristol Defendants at 18–19. This Court disagrees. In *Boivin v. Jones & Vining, Inc.*, 578 A.2d 187 (Me.1990), the Law Court upheld a Superior Court finding that the plaintiff, who had been fired by the defendant company, had failed to establish that psychic harm "reasonably could be expected to befall [an] ordinarily sensitive person" in the circumstances of the case. *Id.* at 189 (quoting *Gammon*, 534 A.2d at 1285). By doing so, the Law Court implicitly accepted the viability of an action for negligent infliction of emotional distress in the context of a breached employment contract. Thus, the Court rejects Defendants' suggestion that Krennerich legally cannot bring a claim for infliction of emotional distress based upon his discharge.

Defendants also argue that Plaintiff's claim for negligent infliction of emotional distress fails because he has not alleged or established any negligence on the part of Defendants. Defendants' Reply (Docket No. 15) at 7. With the exception of the conclusory statement in his affidavit that the summary termination caused him "se-vere emotional distress," Plaintiff fails to even mention negligence or the remaining elements necessary to allege the cause of action. *See* Complaint ¶¶ 22, 30. On this record, the Court concludes that Krennerich has not provided sufficient basis to raise a question of material fact regarding negligence. *See Braverman v. Penobscot Shoe Company*, 859 F.Supp. 596, 607 (D.Me.1994). Thus, Defendants' Motion for Summary Judgment on Count III must be granted insofar as it alleges negligent infliction of emotional distress.

Accordingly, it is *ORDERED* that Defendants Inhabitants of the Town of Bristol, Town of Bristol Parks and Recreation, Bristol Parks and Recreation Commission's Motion for Summary Judgment be, and it is hereby, *GRANTED* on Counts I, II, and III and Defendants Shirley Geyer, John Allan, and Nancy Johanson's Motion for Summary Judgment be, and it is hereby, *GRANTED* on Counts I and III. It is *FURTHER OR-DERED* that Defendants Shirley Geyer, John Allan, and Nancy Johanson's Motion for Summary Judgment be, and it is hereby, *DENIED* on Count II.