**Elizabeth LIBBY**

v.

**CALAIS REGIONAL HOSPITAL.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1988.
Decided March 2, 1989.

---

Eugene C. Coughlin, Amy Faircloth (orally), Vafiades, Brountas & Kominsky, Bangor, for plaintiff.

Daniel L. Lacasse (orally), Brown, Tibbetts, Churchill & Lacasse, Calais, for defendant.

Before McKUSICK, C.J., and
ROBERTS, WATHEN, CLIFFORD,
HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The plaintiff, Elizabeth Libby, a former employee of defendant Calais Regional Hospital (the "Hospital"), appeals from a judgment for the Hospital entered in Superior Court (Washington County; *Smith, J.*) on a motion for a directed verdict made at the close of the plaintiff's case in her suit for breach of contract for wrongful discharge. Libby contends that the court erred in concluding that she did not present enough evidence that her discharge was a breach of contract and that the case should have been submitted to the jury. We affirm the judgment.

Because we are reviewing a judgment entered on a motion for a directed verdict, we "view the evidence 'including every justifiable inference,' in the light most favorable to the plaintiff so that we may decide whether by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained." *Packard v. Central Maine Power Co.*, 477 A.2d 264, 267 (Me. 1984) (quoting *Boetsch v. Rockland Jaycees*, 288 A.2d 102, 104 (Me.1972)).

Libby presented evidence at trial, and the jury would have been warranted in finding that Libby was employed by the Hospital in 1978 as a medical technologist, at which time she was given an employee handbook. When this handbook was revised in 1982, Libby received a copy of the revised handbook as well as an "acknowledgement of receipt." The acknowledgement, which Libby signed, stated that Libby had "received and read" the handbook and that she "understood that this handbook [did] not constitute a contract of employment."

Libby presented evidence to show that she was a competent, helpful employee who had not received any disciplinary action until September of 1984 when she was discharged from employment. There was further evidence that the specific termination procedures outlined in the employee handbook were not followed when Libby was fired.

It is well established in the common law that a contract of employment for an indefinite time is terminable at the will of either party. *Rowell v. Jones & Vining, Inc.*, 524 A.2d 1208, 1211 (Me.1987); *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97, 99 (Me.1984). However, parties may enter into an employment contract terminable only pursuant to its express terms by clearly stating their intention to do so, and they may do so even though no considera-

tion other than services is expected by the employer, or is performed or promised by the employee. *Larrabee*, 486 A.2d at 99–100.

■ The terms of an employment handbook can be used as the means by which an employment contract may be changed from one terminable at will to one terminable only by its express terms. *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880, 894 (1980); *see* Annotation, *Right to Discharge Allegedly "At–Will" Employee as Affected by Employer's Promulgation of Employment Policies as to Discharge*, 33 A.L.R. 4 120, 128–35 (1984 & Supp.1988); *see also Rowell*, 524 A.2d at 1211 (court may look to employment policy manual for terms of employment). The handbook, however, must clearly state an intent to impose restrictions upon the employer's right to discharge the employee. *Larrabee*, 486 A.2d at 99–100.

■ Libby argues that the Hospital's revised handbook manifests a clear intention to enter into a contract terminable only pursuant to its express terms, and thus brings her outside the common law rule that her employment is terminable at will.

The first page of the handbook contains a letter from the Hospital president. The letter states:

> [T]his handbook is your employment guide.... It will explain what you can expect from the hospital, as well as what the hospital will expect from you....

The handbook later delineates behavior that would constitute grounds for immediate dismissal. It also outlines procedures to be followed when an employee's work performance is unsatisfactory. Furthermore, after receiving the handbook, Libby signed an acknowledgement of receipt providing that the handbook "constitutes the general personnel policies of the hospital;" that these policies may be added to or amended; that the employee is "governed by them;" and that the "handbook does not constitute a contract of employment."

The Hospital contends that the disclaimer establishes conclusively that the handbook does not form a contract between it and Libby. Even if we assume that the terms of the handbook comprised a contract with Libby, the handbook merely provides a method of discharge and implies that discharge will be for cause only. The handbook does not, however, clearly limit the Hospital to that method of terminating Libby's employment, and does not expressly restrict the Hospital's right to discharge an employee. Written or oral language merely implying that discharge is for cause only is not sufficient to bind an employer. *Larrabee*, 486 A.2d at 99–100. Libby did not present any evidence of an express restriction on the Hospital's common law right to discharge her at will, and her employment contract for an indefinite time remained terminable at will. No jury verdict for the plaintiff could be sustained, *Rowell*, 524 A.2d at 1211, and the court properly directed the verdict in favor of the Hospital.

The entry is:

Judgment affirmed.

McKUSICK, C.J., and WATHEN and COLLINS, JJ., concurring.

HORNBY, Justice, with whom ROBERTS, Justice, joins, dissenting.

As the Court recognizes, the issue is whether this case should have gone to the jury. I believe that it should have.

First, the evidence was conflicting on whether any portions of the handbook were part of the employment contract. The "Acknowledgment of Receipt" said, on the one hand, that the handbook itself was not a contract and, on the other hand, that the employee was "governed" by the personnel policies it contained and that it outlined the employee's privileges as well as obligations. A letter from the Hospital president, contained in the handbook, informed the employee that the handbook explained "what you can expect from the hospital, as well as what the hospital will expect from you." The handbook set forth how vacation pay accrued, when and how overtime was paid, and the like. Thus, there was certainly a jury question on whether any

portions of the handbook were part of the employment contract.

Second, if the jury found that the handbook's personnel policies were part of the contract, the question remained whether those policies limited the Hospital to firing an employee only for cause. The section on "Termination of Service" appears on pages 18 to 20 of the handbook. The first subheading is "Resignation." It states that employees "must" give notice of resignation and that failure to do so "will result" in the forfeiture of holiday and vacation pay. The next subsection is "Dismissal." It discusses dismissal for "cause," namely, "[i]mproper conduct and violation of hospital rules," or "willful action ... that diminishes or adversely affects the quality of patient care...." It also specifies that there is a six-month probationary period for new employees during which the standard for dismissal is simply "unsatisfactory" performance. Finally, the third subsection is "Disciplinary Guidelines." It states that employees with unsatisfactory work performance "will be counseled verbally" to help improve their performance, that a written warning "will be issued" if the performance does not improve, and that ultimately "a final written notice" "will be made" for necessary corrective action. Then, "[i]f subsequent to the second written warning the hospital determines that satisfactory improvement has not been made, the employee will be dismissed." A number of grounds for immediate dismissal are set forth specifically.

It is difficult to conceive how much clearer the Hospital could have been in stating that after a probationary period it would discharge its employees only for "cause." I see no reason to insist upon the precise language "employees will not be terminated except for cause" as a precondition to letting a jury find a meeting of the minds on that subject.

The Court relies on *Larrabee v. Penobscot Frozen Foods*, 486 A.2d 97 (Me.1984) for its conclusion that more is required. In *Larrabee* we held for the first time that employment contracts are not limited to the two categories of (1) terminable at will or (2) employment for a particular period; employers and employees are also free to enter into employment contracts of no particular duration but in which employees can be discharged only for "cause." We stated that the parties could achieve such a contractual relationship "by clearly stating their intention to do so," 486 A.2d at 99–100, although we did not explain why we should impose that extra verbal hurdle. The Court now elevates the word "clearly" to a specific holding in this case. Although it is not alone in imposing such a requirement, *see, e.g., Henkel v. Educational Research Council of America*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976); *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587 (1967), I see no valid contemporary reason for doing so. Ordinary contract law principles should permit a factfinder simply to determine what it is that the parties agreed upon. Indeed, the Court's approach flies in the face of other principles commonly used in contract law. This handbook, for example, was obviously drafted by the employer and any ambiguity could, therefore, legitimately be construed against the employer. I expect the Court would take a quite different approach in construing a set of policies issued by a bank to its depositors in connection with the management of their deposits.

In short, I believe the jury should have been permitted to determine what it is that the parties agreed upon in this employment contract.