**Monica SNOW, Plaintiff,**

v.

**BE & K CONSTRUCTION CO., Defendant.**

**No. 00–CV–90–B.**

United States District Court, D. Maine.

Jan. 3, 2001.

---

John P. Gause, Berman & Simmons, P.A., Lewiston, ME, for plaintiff.

Leonard W. Langer, Marshall J. Tinkle, Tompkins, Clough, Hirshon & Langer, Portland, ME, for defendant.

## ORDER AND MEMORANDUM OF DECISION

SINGAL, District Judge.

Plaintiff, Monica Snow, has brought claims against her former employer, Defendant, BE & K Construction Company, for sexual harassment and constructive discharge pursuant to Title VII. Before the Court is Defendant's Motion asking the Court to dismiss Plaintiff's Complaint for failure to state a cause of action pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, to order Plaintiff to participate in arbitration and stay the proceedings pending the completion of such arbitration pursuant to sections three and four of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. (*See* Docket # 6.)

Pursuant to Fed.R.Civ.P. 12(b), the Court treats the motion to dismiss as a motion for summary judgment because Defendant has presented matters outside of the pleadings and the Court has considered them. It is within the Court's discretion to convert the 12(b)(6) motion to a summary judgment motion because Plaintiff has had an opportunity to respond to the relevant factual allegations raised by Defendant. *See Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990) (district courts have discretion to convert 12(b)(6) motions to Rule 56 motions without prior notice to parties if nonmovant has had opportunity to respond to movant's affidavits and factual allegations). For the reasons discussed below, Defendant's Motion is DENIED in its entirety.

## I. STANDARD OF REVIEW

When a party opposes a motion to stay pending arbitration on the ground that the parties never agreed to arbitrate, a federal court should apply the summary judgment standard. *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3rd Cir.1980). A court, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* The Third Circuit reasoned that district courts should apply the summary judgment standard in such circumstances because an "order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *See id.* at 54 n. 9.

This reasoning is sound because under the FAA, a party may be entitled to a jury determination of whether or not the parties have entered into an agreement to arbitrate their dispute. The FAA states that

upon being satisfied that the making of the agreement for arbitration or the fail-

ure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4; *see, e.g., Doctor's Assocs. Inc. v. Distajo*, 107 F.3d 126, 129 (2nd Cir.1997) ("a party may demand a jury trial when issues respecting arbitrability are 'in issue' "); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992) ("the Act allows the party resisting arbitration to demand a jury trial."). Numerous courts have followed *Par–Knit. See, e.g., Medtronic, Inc. v. Advanced Cardiovascular Systems, Inc.*, No. 99–3188, 2000 WL 637045, at *1, 2000 U.S.App. LEXIS 10945, at *3 (8th Cir. May 18, 2000) ("because [party moving to stay case pending arbitration] has created no genuine issue of fact concerning its theories for [compelling nonmovant to arbitrate] the district court properly decided the issue without a trial"); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997) ("When parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement."); *Reibstein v. CEDU/Rocky Mountain Academy*, No. 00–1781, 2000 WL 1858718, at *1, 2000 U.S.Dist. LEXIS 18206, at *6–*7 (E.D.Pa. Dec. 19, 2000) ("A motion to compel arbitration is viewed as a summary judgment motion if the parties contest the making of the agreement."); *Endriss v. Eklof Marine Corp.*, 1999 A.M.C. 556, 559 (S.D.N.Y.1998) (applying summary judgment standard to motion to compel arbitration when nonmovant argues that contract featuring arbitration provision is invalid).

In the present case, Plaintiff raises as a defense that the alleged arbitration agreement between her and Defendant is not a

valid contract. Additionally, she argues that even if the agreement is binding upon her, it does not include a requirement to arbitrate claims rather than litigate them. Because both of these arguments go to whether the parties have agreed to arbitrate, the making of the arbitration agreement is "in issue" and therefore, the Court applies the summary judgment standard. *See, e.g., Par–Knit*, 636 F.2d at 54.

Regarding summary judgment, the Court grants such motions "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The Court must view the facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). Following this standard, the Court makes the following findings of fact.

## II. FINDINGS OF FACT

Because a stay pending arbitration is an interlocutory injunction, the Court must make findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). *See Fogarty v. Piper*, 767 F.2d 513, 515 (8th Cir.1985) (remanding denial of motion to stay and compel arbitration because district court failed to make findings of fact and conclusions of law). The essential facts are undisputed.

1. Plaintiff, Monica Snow, is a resident of Maine who worked for Defendant, BE & K Construction Company ("BE & K"), from August 1989 until November 1998.

2. Prior to her alleged wrongful discharge, Snow worked as BE & K's office manager at a paper mill in Jay, Maine.

3. Snow reported directly to the project superintendent, Kenneth Morgan.[1]

4. Snow alleges that Morgan sexually harassed her, inducing her to quit her job. Thereafter, Snow filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which issued her a right-to-sue letter.

5. Subsequently, she filed a lawsuit with this Court alleging sexual harassment, hostile work environment and constructive discharge under both the federal Civil Rights Act, 42 U.S.C. §§ 1981–2000h–6, and the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4633.

6. In September 1996, BE & K promulgated its "Employee Solution Program" for resolving work-related disputes. The company outlined the program in a six-page booklet and BE & K mailed each employee a copy of the booklet along with a cover letter introducing the program. Additionally, the company placed posters on employee bulletin boards discussing the program.

7. Because Snow was a BE & K employee at the time the company instituted the program in 1996, she received a booklet and a cover letter and she would have seen the posters.

8. BE & K's Employee Solution Program provides for five options for dispute resolution: (1) an "open door policy," which allows employees to talk about their problems with supervisors without retaliation, (2) an employee hotline that employees can call anonymously to discuss their concerns, (3) a conference between the employee and a company representative, (4) mediation between both sides, and (5) arbitration.

9. Snow never signed a document assenting to the booklet's terms. In fact, there is no evidence that Snow ever signed any employment-related contract with BE & K.

---

1. Originally, Morgan was also named as a defendant in Plaintiff's Complaint. Plaintiff, however, has dismissed her case against Mor-

gan. (*See* Def.'s Notice of Dismissal (Docket # 2).)

10. Snow and BE & K never had a dialogue or entered into negotiations regarding the booklet or the Employee Solution Program.

11. A provision within the booklet reads:

Effective September 1, 1996, this Program will be the exclusive means of resolving workplace disputes. If you accept or continue your job at BE & K after that date, any employment problems must proceed through the Employee Solution Program before proceeding through the court system. This document is a summary of the Program, and complete details are available from your Human Resources Department or Personnel office. This document in no way effects [sic] any other terms or the nature of your employment, and is not an employee agreement. The Company reserves the right to modify or discontinue this program at any time.

(Emily Rose Aff., Attach. A, "The BE & K Employee Solution Program" at 4 (Docket # 8).)

12. Another provision of the booklet reads:

If your dispute is based on a legally protected right, such as protection against sexual harassment or discrimination based on age, race, or sex, and has not been resolved in Options One, Two, or Three, you or the Company may request Mediation. If either party requests Mediation, the other party is required to participate.

(The BE & K Employee Solution Program at 2.)

13. Another provision of the booklet reads:

If the dispute has not been resolved in Options One, Two, Three, or Four, you or the Company may request Arbitration.

Arbitration is a process in which a dispute is presented to an arbitrator, for a final decision, which may be binding.

(The BE & K Employee Solution Program at 2.)

14. A "questions and answers" segment of the booklet reads:

... What happens if I file a lawsuit against the Company for a workplace dispute without using this program?

If you file a lawsuit, BE & K will ask the court to refer it to our Employee Solution Program.

(The BE & K Employee Solution Program at 5.)

15. The cover letter states that "employees must use this procedure before litigation." (Emily Rose Aff., Attach. B, (Docket # 8).)

16. The posters state that the program "applies to all problems or disputes between BE & K and its' [sic] employees." (Lucy Partridge Aff., Attach. A, (Docket # 7).)

17. Snow has pursued her claims with the EEOC and this Court without availing herself of the dispute resolution procedures established by BE & K.

## III.  CONCLUSIONS OF LAW

18. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, applies to most contracts featuring arbitration provisions, including most employment contracts.

19. Because the booklet does not fall within the narrow exception for certain types of employment contracts, the FAA is applicable to the present case.

20. Under the FAA, courts apply state law contract principles in determining whether the parties agreed to arbitrate.

21. Within the common law of contracts, a contract cannot exist unless it is supported by consideration.

22. For a contract to be valid under the common law, it must feature a manifestation of mutual assent between the parties.

23. Under contract law, a party may make a promise asking for performance, rather than a reciprocal promise, as con-

sideration. If the other party executes performance, a unilateral contract arises. The exchange of promise for performance constitutes the requisite manifestation of mutual assent.

24. Snow worked for BE & K as an employee-at-will from August 1989 until November 1998.

25. The Employee Solution Program booklet includes a provision stating that if BE & K employees continue to work for the company, they thereby demonstrate their assent to the booklet's terms.

26. The booklet implies that in consideration for employees agreeing to be bound by the booklet's terms, BE & K implicitly promises to continue to maintain them as at-will employees and to abide by the booklet's terms too.

27. The booklet includes a broad disclaimer stating that it is not an employee agreement and that BE & K reserves the right to modify or discontinue the alternative dispute resolution program at any time.

28. This disclaimer renders BE & K's implied promise as merely illusory.

29. An illusory promise is not consideration.

30. Furthermore, because BE & K did not make a valid promise, there was no exchange of promise for performance, so there was no manifestation of mutual assent between the parties.

31. Thus, the booklet is not a valid contract and Plaintiff is not bound to proceed to arbitration.

32. In the alternative, even if the Court viewed the booklet as a binding contract, the language in the booklet does not mandate that Snow engage in arbitration rather than initiate legal proceedings.

33. As a final note, the Court is not convinced that as a matter of law, an employee can waive her right to enforce statutory federal claims in court by implicitly agreeing to arbitrate those claims in a unilateral contract drafted by the employer.

The Court offers the following discussion to explain its conclusions of law.

## IV. DISCUSSION

Defendant contends that Plaintiff must engage in arbitration because of the language of the Employee Solution Program booklet. Plaintiff, however, argues that arbitration is not necessary because the booklet is not a binding agreement, and even if it was, the language of the booklet does not necessarily require arbitration. Defendant responds by claiming that the booklet is, in fact, binding on the parties. As well, Defendant argues that even if the booklet contains some ambiguities, they should be construed in favor of arbitration, according to the case law surrounding the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Plaintiff asserts that the FAA is inapplicable to this case because the FAA does not apply to employment contracts.

Congress enacted the FAA to guarantee the enforcement of private contracts by which parties agree to arbitrate disputes rather than litigate. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Congress found that legislation was necessary to protect the validity of arbitration agreements because American courts had inherited from British common law "an anachronistic judicial hostility" to such agreements. *See id.* at 626 n. 14, 105 S.Ct. 3346. The main goal of establishing the FAA was to put arbitration contracts on "the same footing as other contracts." *See, e.g., Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 271, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Congress favored safeguarding arbitration agreements because arbitration of disputes tends to avoid "the costliness and delays of litigation." *Dean Witter Reynolds, Inc. v. Byrd,* 470

U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924)). The enactment of the FAA was "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### A. Applicability of the FAA

■ First, the Court can quickly dispense with Plaintiff's argument that the FAA does not apply to this case. Relying on Ninth Circuit precedent, Snow argues that the FAA is inapplicable to employment contracts. *See Circuit City Stores, Inc. v. Adams*, 194 F.3d 1070, 1071–72 (9th Cir.1999), *cert. granted*, —— U.S. ——, 120 S.Ct. 2004, 146 L.Ed.2d 955 (2000). The Ninth Circuit, however, differs from other circuit courts of appeal, including the First Circuit, which have held that the FAA applies to most employment contracts. *See, e.g., Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471–72 (D.C.Cir.1997); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 748 (5th Cir.1996); *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600–02 (6th Cir.1995); *Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1068–69 (2nd Cir.1972); *Dickstein v. duPont*, 443 F.2d 783, 784–85 (1st Cir.1971); *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers*, 207 F.2d 450, 453–55 (3rd Cir. 1953). These courts have interpreted the FAA as having a narrow exception, rendering it inapplicable to employment contracts for seamen, railroad workers and others "involved in, or closely related to, the actual movement of goods in interstate

commerce." *Dickstein*, 443 F.2d at 785; *see, e.g., Cole*, 105 F.3d at 1471.[2] In the present case, Plaintiff worked for Defendant as a manager at a paper mill, and was not employed as a seaman, rail worker, or otherwise within the narrow exception. Furthermore, the First Circuit has specifically ruled that arbitration agreements apply to claims brought under Title VII for employment discrimination. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 11–12 (1st Cir. 1999). Thus, the FAA applies to the instant case.

### B. Whether a Valid Contract Exists

■ Next, the Court considers whether or not the Employee Solution Program booklet constitutes a valid, binding agreement between Plaintiff and Defendant. *See Bangor Hydro–Elec. Co. v. New England Tel. & Tel. Co.*, 62 F.Supp.2d 152, 156 (D.Me.1999) ("The first and primary question before the Court in this case is whether the parties entered into an arbitration agreement at all."). The FAA states that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).[3] Furthermore, it

2. This narrow exception is based on language in the FAA, which states that the FAA shall not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

3. *AT & T Technologies* and the cases upon which it relies deal with labor disputes involv-

ing collective bargaining agreements. *See AT & T Techs.*, 475 U.S. at 648–49, 106 S.Ct. 1415 (citing, e.g., *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct.

is the duty of the court—not the arbitrator—to decide whether the parties, in fact, agreed to arbitrate. *See First Options v. Kaplan*, 514 U.S. 938, 942–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

When determining whether the parties entered into a contract, federal courts utilize general state law principles of contract law. *See id.; Rosenberg*, 170 F.3d at 19. In doing so, courts look to state common law principles applicable to contracts in general, but not state laws that single out arbitration contracts. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684–86, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (holding that FAA preempts Montana statute that establishes special requirements for the formation of arbitration agreements).

Defendant argues that the Employee Solution Program booklet constitutes a contract, and contends that by continuing to work for the company, Plaintiff demonstrated her assent to the booklet's arbitration requirements. Defendant bases this argument on language in the booklet stating that if employees continue to work for Defendant, then they must avail themselves of the Employee Solution Program—including its arbitration provisions—before initiating legal action against the company. Defendant contends that this language was the offer of a unilateral contract, and that Plaintiff's continued employment after September 1, 1996 constituted her acceptance. In addition, Defendant points to other statements supporting this argument: the cover letter states that "employees must use this procedure before litigation" and the posters state that the program "applies to all problems or disputes between BE & K and its' [sic] employees." (Emily Rose Aff., Attach. B,

(Docket # 8); Lucy Partridge Aff., Attach. A, (Docket # 7).)

Defendant bases this argument chiefly on *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97 (Me.1984), in which the employee plaintiffs alleged that their employer could not terminate them without just cause, as required by certain policies and work rules distributed by the employer. *See id.* at 98. The Maine Law Court ruled that workplace policies and rules could constitute the terms of a binding contract under certain circumstances. *See id.* at 100. Defendant further relies on the dissent accompanying *Taliento v. Portland W. Neighborhood Planning Council*, 705 A.2d 696 (Me.1997), which explains that *Larrabee* stands for the proposition that an employee handbook may constitute a binding agreement between an employer and an employee. *See id.* at 701 ("Handbook language can constitute an offer, one which is communicated by the handbook's dissemination to the employee, and the employee can accept the offer by retaining employment with knowledge of the conditions, which thereby become contractual obligations.") (Lipez, J., dissenting). The majority in *Taliento* held that an employee cannot recover against her employer for termination without just cause under the terms of an employee handbook, unless that handbook clearly states that the employer is not free to discharge an employee without cause. *See Taliento*, 705 A.2d at 699.

Defendant cites several other opinions holding that employee guidelines and handbooks may constitute binding agreements. *See, e.g., Robertson v. R.B.A., Inc.*, 615 F.Supp. 1477, 1482–83 (C.D.Ill.1985); *Hoffman–La Roche, Inc. v. Campbell*, 512 So.2d 725, 735 (Ala.1987); *Duldulao v. St.*

1363, 4 L.Ed.2d 1432 (1960)). These cases interpret arbitration clauses in the collective bargaining agreements under general principles of contract law as well as the Labor Management Relations Act, 29 U.S.C. § 185(a), but do not discuss the FAA. Subsequently, while analyzing arbitration agreements pursuant to the FAA, courts have ap-

plied the reasoning in *AT & T Technologies* and these other opinions to cases not involving collective bargaining agreements. *See, e.g., First Options v. Kaplan*, 514 U.S. 938, 942–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 9 (1st Cir.2000); *McCarthy*, 22 F.3d at 355.

*Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318–20 (1987); *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). Indeed, "the overwhelming majority of courts considering the issue have held that an employee handbook may, under proper circumstances, be contractually binding." *Duldulao*, 106 Ill.Dec. 8, 505 N.E.2d at 316–17 (listing opinions supporting this argument). Moreover, it appears as though the First Circuit would uphold an employee booklet as a contract. *See Hinchey v. NYNEX Corp.*, 144 F.3d 134, 141–42 (1st Cir.1998) (holding that an employee handbook did not constitute a contract under Massachusetts law, but noting that Massachusetts has guidelines providing for handbooks to serve as binding contracts).

Even though an employee handbook could constitute a binding contract under Maine law, that does not mean that such handbooks escape the normal rules of contract law. *See, e.g., Duldulao*, 106 Ill.Dec. 8, 505 N.E.2d at 318 ("an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present."); *Pine River*, 333 N.W.2d at 627 ("personnel handbook provisions, if they meet the requirements for formation of a unilateral contract, may become enforceable as part of the original employment contract."). The primary rule of contract law is that "[e]very contract requires 'consideration' to support it, and any promise not supported by consideration is unenforceable." *Whitten v. Greeley–Shaw*, 520 A.2d 1307, 1309 (Me.1987). Furthermore,

> [t]o establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties.

*Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206, 1211 (Me.1997) (quoting *Van Voorhees v. Dodge*, 679 A.2d 1077, 1080 (Me.1996)). A manifestation of mutual assent, either express or implied, is not immediately apparent in this case. Plaintiff never signed anything expressing assent to the booklet. *Cf. Topf*, 942 F.Supp. at 764–65, 772 (holding employee bound to arbitrate claims where employee signed document expressly assenting to employee handbook's arbitration provisions). The two parties never engaged in a dialogue or otherwise negotiated about the booklet. Such factors, however, are not necessary for the creation of a unilateral contract.

■ Under contract law, a party may make a promise asking for performance, rather than a reciprocal promise, as consideration. *See, e.g., Motel Servs., Inc. v. Cent. Me. Power Co.*, 394 A.2d 786, 787–89 (Me.1978). If the other party executes performance, a unilateral contract arises. *See, e.g., Brackenbury v. Hodgkin*, 116 Me. 399, 102 A. 106, 107 (1917). The exchange of promise for performance demonstrates the requisite manifestation of mutual assent. *See* Restatement (Second) of Contracts § 18. However, "[b]efore a party's performance may constitute consideration, there must be a bargained—for promise in exchange for which consideration is given." *Panasonic Communications & Sys. Co. v. State of Maine*, 691 A.2d 190, 194 (Me. 1997); *see* Restatement (Second) of Contracts §§ 18–23. Thus, Plaintiff's performance (continuing to work for Defendant) cannot be viewed as consideration unless Defendant made a promise in return. *See, e.g., Panasonic*, 691 A.2d at 194; *Whitten*, 520 A.2d at 1310. Defendant implies that in exchange for Plaintiff's performance, Defendant promised to maintain her as an at-will employee and to abide by the booklet's terms too. The booklet, however, specifically states, "This document in no way effects [sic] any other terms or the nature of your employment, and is not an employee agreement. The Company reserves the right to modify or discontinue this program at any time." (BE & K Em-

ployee Solution Program at 4 (Docket # 8).)

In its analysis of this disclaimer, the Court turns to the vast array of case law pertaining to disclaimers in employee handbooks. Nearly all of these cases arise in a context similar to that of *Larrabee* an employer issued an employee handbook including statements to the effect that employees could not be terminated without cause, subsequently the employer fired the employee without just cause, then the employee sued under the theory that the employee handbook was a contract that bound the employer. *See, e.g., Larrabee,* 486 A.2d at 98–99; *Pine River,* 333 N.W.2d at 624–25; Stephen F. Befort, *Employee Handbooks and the Legal Effect of Disclaimers,* 13 Indus.Rel.L.J. 326 (1991/1992); George L. Blum, Annotation, *Effectiveness of Employer's Disclaimer of Representations in Personnel Manual or Employee Handbook Altering At–Will Employment Relationship,* 17 A.L.R.5th 1 (1994). Many courts have held that such disclaimers render an employee handbook as unenforceable against the employer. *See, e.g., Workman v. United Parcel Serv., Inc.,* 234 F.3d 998, 1000 (7th Cir.2000) (applying Indiana law); *Hinchey,* 144 F.3d at 142 (applying Massachusetts law); *MCI Telecomms. Corp. v. Wanzer,* 897 F.2d 703, 706–07 (4th Cir.1990) (applying District of Columbia law). On the other hand, some courts have held that certain disclaimers in employee handbooks do not prevent employees from enforcing the terms of those handbooks against their employers. *See, e.g., Mecier v. Branon,* 930 F.Supp. 165, 169–70 (D.Vt.1996) (applying Vermont law); *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 A.2d 554, 561–62 (1994); *Jones v. Cent. Peninsula Gen. Hosp.,* 779 P.2d 783, 788 (Alaska 1989). These cases, however, do not address the issue presented here: whether an employer, who drafted an employee handbook, may hold the terms of that handbook against an employee despite the inclusion of a broad disclaimer clause.

■ Including the disclaimer suggests that Defendant's implied promise was merely illusory. *See Corthell v. Summit Thread Co.,* 132 Me. 94, 167 A. 79, 81 (1933) ("a reservation to either party of an *unlimited* right to determine the nature and extent of his performance renders his obligation too indefinite for legal enforcement, making it, as it is termed, merely illusory") (emphasis in original); Restatement (Second) of Contracts §§ 2 cmt. e, 77 & cmt. a (1981); Joseph M. Perillo & Helen Hadjiyannakis Bender, 2 *Corbin on Contracts* § 5.28 (1995). After all, if Defendant is able to modify or discontinue the program at any time, nothing would have prevented the company from choosing to avoid arbitration. *See Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1128, 1132 (7th Cir.1997) (holding that employee plaintiff not bound by arbitration clause in employee manual because manual included broad disclaimer stating that it was not a contract and that employer could modify or terminate the terms of the manual at any time); *Heurtebise v. Reliable Bus. Computers, Inc.,* 452 Mich. 405, 550 N.W.2d 243, 247 (1996) (same); *see also Smith v. Chrysler Fin. Corp.,* 101 F.Supp.2d 534, 538–39 (E.D.Mich.2000) (employee plaintiff not bound by arbitration clause in employee manual because manual included disclaimer stating that employer could modify or terminate the terms of the manual at any time). The Maine Law Court has suggested that a disclaimer in a handbook would prevent a court from enforcing it as a contract. *See Libby v. Calais Reg'l Hosp.,* 554 A.2d 1181, 1183 (Me.1989) (suggesting that a disclaimer in an employee handbook could negate it as a binding contract); *see also Taliento,* 705 A.2d at 705 (arguing that a handbook should be treated as a binding contract in part because the employer did not include a disclaimer) (Lipez, J. dissenting); *see also* Restatement (Second) of Contracts § 21 cmt. b ("In a written document prepared by one party [a manifestation of intention that a promise shall not affect legal relations] may be

read against the party who prepared it."). Similarly, the First Circuit has noted that such a disclaimer clause would probably render an employee handbook's arbitration requirements as unenforceable. *See Ramirez–De–Arellano v. Am. Airlines,* 133 F.3d 89, 90–91 (1st Cir.1997). Therefore, based on the foregoing reasons, this Court finds that the booklet included only an illusory promise. An illusory promise is not consideration. *See, e.g.,* Restatement (Second) of Contracts § 77; 2 *Corbin on Contracts* § 5.28. Furthermore, because Defendant provided only an illusory promise, there was no exchange of promise for performance, and therefore no manifestation of mutual assent. *See, e.g., Searles,* 695 A.2d at 1211; Restatement (Second) of Contracts § 18. Because of the lack of consideration and the lack of a manifestation of mutual assent, no contract exists between the parties, and Plaintiff cannot be bound to the arbitration requirements.

Defendant, who crafted the language of the booklet, was trying to "have its cake and eat it too." Defendant wished to bind its employees to the terms of the booklet, while carving out an escape route that would enable the company to avoid the terms of the booklet if it later realized that the booklet's terms no longer served its interests. Here, Defendant unilaterally constructed all of the rules of its alternative dispute resolution program, without negotiating with Plaintiff or asking her to demonstrate her assent with a signature. Therefore, it would be fundamentally unfair to hold Plaintiff to the terms of the booklet, when Defendant retains its ability to evade the booklet's terms entirely.

### C. Whether the Booklet Requires Arbitration

Even if the booklet constituted a binding agreement upon Plaintiff, the Court finds that the terms of the booklet do not compel Plaintiff to engage in arbitration rather than seek legal redress. The Court is aware of the strong federal presumption favoring arbitration. *See,* *e.g., Volt,* 489 U.S. at 475–76, 109 S.Ct. 1248; *Moses H. Cone Mem'l,* 460 U.S. at 24–25, 103 S.Ct. 927. In this case, however, the booklet includes highly non-committal language. The booklet states that Defendant or its employees "may request Arbitration .... which may be binding." (The BE & K Employee Solution Program at 2.) This language connotes that arbitration is entirely optional. Furthermore, this provision does not require that the other party agree to participate in arbitration, in stark contrast to the language used by Defendant in the mediation clause, which specifies that "[i]f either party requests Mediation, the other party is required to participate." (*Id.*) Thus, the Court concludes that the terms of the booklet do not require Plaintiff to engage in arbitration. *See Brennan v. King,* 139 F.3d 258, 266 (1st Cir.1998) ("handbook speaks only of the [plaintiff] having a 'right' to request arbitration ... [so] the parties have made resort to arbitration the prerogative, but not the obligation, of the [plaintiff].").

### D. Unclear Whether Unilateral Contracts May Prevent Civil Rights Claims

Finally, the Court notes that although a properly drafted employee handbook could probably constitute a binding unilateral contract under Maine law, it is not clear that such a unilateral contract would prevent an employee from availing herself of her statutory rights under Title VII. In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the Supreme Court ruled that an employee could agree to arbitrate federal statutory claims. *See id.* at 35, 111 S.Ct. 1647. In *Gilmer,* the plaintiff brought suit under the Age Discrimination in Employment Act, even though he had signed an individual agreement stating he would arbitrate any dispute rather than litigate. *See id.* at 23, 111 S.Ct. 1647. Therefore, the Court held that the trial court should have granted the defendant's motion to compel arbitration. *See id.* at 35, 111

S.Ct. 1647; *see also Mitsubishi,* 473 U.S. at 625, 105 S.Ct. 3346 ("we find no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims."). In contrast, the Court held in *Wright v. Universal Maritime Service Corp.,* 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), that for an employee to waive her rights to litigate statutory claims through an arbitration clause in a collective bargaining agreement, that agreement must include a "clear and unmistakable" provision waiving the employees' rights to make such statutory claims. *See id.* at 79–80, 119 S.Ct. 391; *see also Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 51–52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (ruling that under a collective bargaining agreement, "an employee's rights under Title VII are not susceptible of prospective waiver.").

In the present case, the booklet is dissimilar from both the signed agreement in *Gilmer* and the collective bargaining agreement in *Wright.* The booklet is closer to an individual contract in that it asks each employee to render performance by continuing to work for Defendant and thus acquiesce to the arbitration procedures. As well, the booklet resembles a collective bargaining agreement because Plaintiff was not directly involved in the creation of the booklet and because the booklet speaks to all of Defendant's employees, not Plaintiff alone. Viewing the booklet as if it were a collective bargaining agreement, a court would be hard-pressed to find a "clear and unmistakable" waiver of statutory claims.[4] Moreover, even if a court did approach the booklet as an individual contract, this Court has serious doubts whether it is sound public policy that such a unilateral contract, not negotiated or signed by an employee, could be used by an employer to thwart employees from

seeking a judicial forum for the resolution of their statutory civil rights claims.

## V. CONCLUSION

For the reasons discussed above, it would be inappropriate to order a stay, to compel arbitration or to order summary judgment. Defendant's Motion is DENIED in its entirety.

SO ORDERED.

---

**4.** The arbitration provision of the booklet does not address statutory claims at all, which differs considerably from the booklet's mediation clause. The mediation provision explicitly states that disputes "based on a legally

protected right, such as protection against sexual harassment or discrimination" is subject to mandatory (but non-binding) mediation. (*See* The BE & K Employee Solution Program at 2.)