**Daniel BARRERA, Plaintiff**

v.

**TOWN OF BROWNVILLE, et al., Defendants**

**No. 00–CV–159–B–S.**

United States District Court, D. Maine.

May 18, 2001.

---

John P. Gause, Berman & Simmons, P.A., Lewiston, ME, for Plaintiffs.

Mark V. Franco, Thompson & Bowie, Portland, Bernard J. Kubetz, Eaton, Peabody, Bradford & Veague, Bangor, ME, for Defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SINGAL, District Judge.

Before the Court is a Motion for Summary Judgment filed by Defendants Town of Brownville and James Catlin (Docket # 8). For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. STANDARD OF REVIEW

A federal court grants summary judgment "if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the Local Rules, the Court has "no independent duty to search and consider any part of the record." Local Rule 56(e). Rather, the Court relies on the parties' submitted statements of material facts ("SMF") and the record citations found therein to construe the relevant facts. *See* Local Rule 56. The Court must view these facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993). However, the nonmovant cannot rely on " 'conclusory allegations, improbable inferences, and unsupported speculation.' " *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 39 (1st Cir.2000) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). Pursuant to this standard, the Court lays out the relevant facts below.

## II. BACKGROUND

Starting in 1994, Plaintiff Daniel Barrera began working full time for the Town of Brownville ("Brownville" or the "Town") splitting his time between the Town's Water Department and the Sanitation Department. When he was hired, Barrera received a copy of the Town's Personnel Policy (the "Personnel Policy"). In fact, all persons hired by the Town are told of the Personnel Policy and their right to review the policy.[1] During the years in question, Brownville employed approximately ten full-time employees, including a town manager. At some point in 1994, Defendant James Catlin was hired as Brownville's Town Manager. At the time Catlin was hired, Barrera was already working for the Town.

In 1998, Barrera obtained a commercial driver's license ("CDL") and began driving

---

1. Plaintiff has filed a Motion to Supplement Summary Judgment Record (Docket # 16) along with a copy of the Town's Personnel Policy. Defendants have previously acknowledged that the Personnel Policy was in place at the time of Plaintiff's termination. Plaintiff represents that this supplementation of the record would not prejudice Defendants. Defendants filed no objection to the Motion and, in fact, rely on the same Personnel Policy to support their Motion for Summary Judgment. Therefore, the Court herein GRANTS this Motion (Docket # 16) and considers the Personnel Policy to be part of the factual record supporting Plaintiff's Statement of Material Facts.

Brownville's sanitation truck as part of his duties. After obtaining a CDL license, Barrera was informed that he was subject to the random drug testing provisions of the Town's Alcohol and Drug Policy. The Town implemented this policy in 1996 and pursuant to the policy randomly tested the four employees who held CDL licenses.

On Monday, February 22, 1999, Mr. Catlin notified Barrera that he would be required to submit to a random drug test. The same day Barrera submitted a urine sample. This was the first time since obtaining his CDL that Barrera was subjected to a random drug test. Later that week, on Thursday, February 25, 1999, Barrera was called to the Town Office to return a telephone call from a company known as MedReview, which was responsible for processing drug test results. Upon returning the call and providing adequate information to verify his identity, MedReview informed Barrera that his February 22nd urine sample had tested positive for cannabis. Although he was entitled to a second test of his February 22nd sample, Barrera declined this second test because he believed the results were accurate in light of his having spent the Sunday prior to the test in an ice shack with persons who had smoked marijuana. Barrera also offered this explanation of his positive result to Catlin, who was informed of Barrera's positive test result by MedReview. MedReview also sent Catlin a letter, dated February 25, 1999, confirming the February 22nd test result.

Because of the positive test result, Catlin removed Barrera from his position as a sanitation truck driver and barred him from driving all municipal vehicles. As a result of these restrictions, his work hours were cut. Catlin informed Barrera of these changes in his employment status by letter dated February 25, 1999. In the same letter, Catlin informed Barrera of the relevant provisions of the Town's Drug Policy and his right to request a hearing "before further disciplinary action [was] taken." (Def. SMF ¶ 12.)

Pursuant to the Town's Drug Policy, an employee with a confirmed positive test result is supposed to be referred to a substance abuse counselor. Barrera refused substance abuse counseling. In lieu of the referral, Barrera agreed to surrender his CDL license. Ultimately, Barrera and Catlin both signed a letter agreement dated March 3, 1999 (the "March 3rd letter agreement"), under which Barrera agreed to surrender his CDL license, work fewer hours and submit to additional random drug tests. Pursuant to the March 3rd letter agreement, Catlin scheduled Barrera for a second drug test on March 22, 1999 and Barrera submitted his second urine sample that same day. On March 23rd around 4 p.m., Catlin received a phone call from MedReview. What was said during this short phone call is disputed. However, Catlin claims that MedReview told him they had a positive test result for David Barrera and Catlin assumed they were referring to the March 22nd test.

As a result of this phone call, Catlin telephoned David Gray, the Town Attorney, to review what steps should be taken under the Town's Drug Policy in response to Barrera's alleged second positive drug test. On March 24th, Catlin spoke with Barrera, informed him of the second positive test result and explained that he was still considering what needed to be done as a result. Upon hearing of his second positive test result, Barrera expressed confusion as to why his second test would have a positive result. However, neither Barrera nor Catlin took any steps to confirm the results allegedly reported by MedReview during the March 23rd phone call.

On March 25, 1999, Catlin wrote a confidential memorandum to the Brownville

Board of Selectmen informing them of his decision to terminate Barrera based on two consecutive positive drug tests. Catlin informed Barrera of his immediate termination during the course of two exit interviews on March 26, 1999. During the second of these interviews, Catlin provided Barrera with a termination letter that informed him of his right to appeal. Catlin did not hold a pre-termination hearing.

Shortly after being terminated, Barrera decided to relocate with his wife to California. He also filed for unemployment benefits, which were denied. In May 1999, Barrera appealed the denial of unemployment benefits and the appeal was set for a hearing. In the course of preparing for this hearing, Catlin realized he had never received written confirmation of Barrera's second positive test result and he contacted MedReview to obtain this written confirmation. In response, MedReview sent him a test report, dated May 17, 1999, indicating that Barrera's second test was, in fact, negative. After receiving this corrected information, Catlin, along with the Town Attorney, attended the hearing on Barrera's appeal of unemployment benefits. Although Catlin knew that the unemployment office was operating under the misconception that Barrera's second drug test was positive, he made no attempt to inform unemployment officials that Barrera's second test result was negative. Additionally, Catlin made no attempts to contact Barrera to reinstate him or to inform him of his actual test results.

On September 9, 1999, by word of mouth, Barrera was informed that his March 22nd drug test was, in fact, negative. The same day he called the Town Office asking for copies of his drug test results. Catlin sent these results to Barrera who received them on September 17, 1999. On September 24, 1999, Barrera faxed a notice to the Town stating that he wished to appeal his termination. In a written response, Catlin advised Barrera to review his rights and remedies with legal counsel and have that counsel contact him with any questions. This advice gave rise to the present case.

## III.  DISCUSSION

The pending Motion requires the Court to consider four counts of Plaintiff's complaint: a claim for a violation of substantive due process (Count I), a claim for violation of procedural due process (Count II), breach of contract (Count III), and a claim for violations of Maine's Drug Testing Statute, 26 M.R.S.A. 681 *et seq.* (Count V).[2]

In short, a material issue of fact regarding the March 23rd phone call between Catlin and the MedReview representative ultimately prevents the Court from granting summary judgment on all of these claims. The Court simply cannot grant summary judgment on viable claims when the substance of the March 23rd phone call, which all parties agree served as the basis for Mr. Barrera's termination, is unclear. To the extent Defendants have proffered arguments suggesting that they are entitled to judgment as a matter of law on one or more of Plaintiff's claims regardless of the substance of the March 23rd phone call, the Court finds those arguments to be without merit for the reasons stated below.

**2.** Plaintiff's Complaint (Docket # 1) also states a claim for promissory estoppel against the Town (Count IV) and a claim for defamation against Defendant Catlin (Count VI). However, Plaintiff now states that he is no longer pursuing these claims. (*See* Pl. Obj. to Def. Mot. for Summ. J. at 2 & 12 n. 5 (Docket # 11).) Thus, as to these counts, Defendants clearly are entitled to summary judgment.

## A. Breach of Contract (Count III)

■ Plaintiff asserts a breach of contract claim against the Town alleging that Brownville's Personnel Policy was an employment contract and that the Town breached the contract for terminating him without "just and sufficient cause" as required by the provisions of the Personnel Policy. Defendants deny that there is sufficient evidence to support the conclusion that Brownville's Personnel Policy gave rise to an employment contract between Brownville and Barrera.

These arguments require the Court to revisit the quagmire of Maine law regarding when an employee handbooks amounts to an employment contract. *See Taliento v. Portland W. Neighborhood Planning Council,* 705 A.2d 696, 700–06 (Me.1997) (explaining Maine's relevant case law on this issue) (Lipez, J. dissenting); *see also Snow v. BE & K Constr. Co.,* 126 F.Supp.2d 5, 12–14 (D.Me.2001) (dealing with the same case law in the context of an employee handbook that contained an arbitration clause). Generally,

> '[i]n Maine it has long been the rule that a contract of employment for an indefinite length of time is terminable at the will of either party.' Parties may provide that an employer is not free to discharge an employee without cause, but intent to do so must be clearly stated.

*Id.* at 699 (quoting *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97, 99 (Me. 1984)). The Maine Supreme Judicial Court has applied this general principle to hold that various employee manuals were not contracts on the grounds that the restrictions on the employer's right to discharge were not clearly stated. *See, e.g., Taliento,* 705 A.2d at 699 (finding employee handbook provided "a method of discharging an employee" but did not clearly restrict employer); *Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 155 (Me.1991)

(finding a pamphlet entitled "Rules and Regulations" did not clearly state that employer would only discharge employee for cause); *Libby v. Calais Reg'l Hosp.,* 554 A.2d 1181, 1183 (Me.1989) (finding handbook that included specific disclaimer that it was not a contract of employment did not clearly limit employer's general ability to discharge an employee at will).

In contrast to the its decisions in *Taliento, Bard* and *Libby,* the Maine Law Court has upheld the finding of an enforceable oral contract of employment between a town and a town manager when the town's charter explicitly provided that the town manager could only be removed for "just cause." *Mercier v. Town of Fairfield,* 628 A.2d 1053, 1055 n. 5 (Me.1993). Additionally, in a case applying Maine law, the First Circuit found that an employment manual that required removal to be "based solely on merit, ability (performance), and justice" amounted to a limitation on the employer's ability to terminate at will. *Cummings v. S. Portland Hous. Auth.,* 985 F.2d 1, 3 (1st Cir.1993) (reversing district court's grant of summary judgment).

Quite simply, the Court finds the facts of this case to be more analogous to *Cummings* and *Mercier.* First, the record suggests that Brownville's Personnel Policy (the "Personnel Policy") was given to Barrera when he was hired. The Policy consists of eleven pages and deals with all aspects of employment including benefits, promotions, suspensions, discharges, work-related travel, and grievance procedures. In relevant part, the Personnel Policy specifically states, "*Discharge for cause:* No employee will be discharged without good and sufficient cause." (Personnel Policy (Attach. to Docket # 16) at 10.) Moreover, the Personnel Policy calls for each employee to serve a six month period of probation during which "the appointing au-

thority may remove the probationer at any time if his work and conduct are found to be below satisfactory standards." (*Id.* at 1.) It goes on to state, "Upon completion of the probationary period an employee will attain permanent employee status." (*Id.*)

Viewing the facts in the light most favorable to Barrera, the Personnel Policy created a unilateral employment contract for an indefinite period of time under which Barrera clearly could only be terminated for "good and sufficient cause." *See Snow*, 126 F.Supp.2d at 13. Given these facts, the Court concludes that Defendant Brownville is not entitled to summary judgment on Plaintiff's breach of contract claim.[3]

## B. Due Process (Counts I & II)

■ As a matter of law, in order to proceed with both his substantive and procedural due process claims, Plaintiff must show that he had a property right in his continuing employment with the Town of Brownville. "In Maine a property interest in continued employment may be established by contract, statute, or by proof of an objectively reasonable expectation of continued employment." *Krennerich v. Inhabitants of Bristol*, 943 F.Supp. 1345, 1352 (D.Me.1996) (citing *Mercier*, 628 A.2d at 1055) (other citations omitted).

■ Plaintiff cites 30–A M.R.S.A § 2636(14) as a statutory basis for finding that Barrera had a property interest in his continued employment with the Town. This provision addresses the authority of a town manager to remove appointments and states that the town manager "[h]as exclu-

sive authority to remove for cause, after notice and hearing, all persons whom the manager is authorized to appoint and report all removals to the board of selectmen." 30–A M.R.S.A. § 2636(14). The Maine Law Court has not specifically ruled on whether this statutory provision, which towns may opt out of through a town ordinance, gives rise to a property interest in continued employment.[4] *See Farley v. Town of Washburn*, 704 A.2d 347, 348–49 (Me.1997). However, in *Barber v. Town of Fairfield*, 460 A.2d 1001 (Me.1983), the Maine Law Court ruled that a previous version of the same statutory provision dealing with a town manager's authority to remove town employees did create a property interest by limiting the town manager to removals "for cause after notice and a hearing." *See id.* at 1005 (discussing 30 M.R.S.A. § 2317(1)(N), which has since been repealed). Thus, based on the Law Court's decision in *Barber*, the Court finds that section 2636(14) limited the town manager's authority to discharge Barrera thereby creating a property interest in his continued employment.

■ The Court notes that Brownville's Personnel Policy, which Barrera received when he was hired, also supports this conclusion. First, the Court previously found that there is sufficient evidence for a reasonable jury to find that the Personnel Policy was a contract that clearly stated that employees could only be discharged for cause. Thus, it is also objectively reasonable for a Brownville employee, subject to the Personnel Policy, to believe that

---

**3.** As a matter of Maine law, it is not clear whether Plaintiff was required to exhaust his contractual grievance procedures in order to maintain a *breach of contract* claim. *See, e.g., Brennan v. King*, 139 F.3d 258, 269–70 (1st Cir.1998) (holding that under Massachusetts law an employee must follow contract's grievance procedure before asserting a breach of contract claim for wrongful termination).

Nonetheless, Barrera's September 24th written request to appeal his termination, to which Catlin responded, arguably could have satisfied any exhaustion requirement.

**4.** There is no evidence in the record that Brownville has enacted a Town ordinance opting out of 30–A M.R.S.A. § 2636(6) & (14).

once the probationary period is completed, he will only be discharged for cause. *See Cummings*, 985 F.2d at 2–3 (finding language in employment manual created a constitutionally protected property interest in continued employment); *Krennerich*, 943 F.Supp. at 1353 (finding plaintiff had presented evidence sufficient to suggest a reasonable expectation of continued employment); *Mercier*, 628 A.2d at 1056 n. 5 ("Legitimate expectations of continued employment arise from statute, contract, or the conduct or policy of the employer.").

■ Moreover, the Court finds that the March 3rd letter agreement signed by Barrera did not make his expectation of continued employment unreasonable. Rather, a jury could find that it was objectively reasonable for Barrera to believe that if he complied with the agreement and his subsequent drug test results were negative, his employment would continue although he might work fewer hours since he no longer would be driving the sanitation truck.

1. Procedural Due Process

■ Defendants argue that Plaintiff's failure to pursue a post-termination appeal prevents him from pressing his claim for violations of procedural due process. However, Plaintiff's procedural due process claim is premised on Defendants' failure to provide him a hearing, with notice and an opportunity to be heard, *prior to* his termination. Any alleged failure to exhaust post-termination remedies does not prevent Plaintiff from pressing this claim. *See Cotnoir v. Univ. of Me. Sys.*, 35 F.3d 6, 13 (1st Cir.1994) ("If an employee is fired without [the required] pre-termination protections, normally the constitutional deprivation is then complete."); *Krennerich*, 943 F.Supp. at 1355 ("[N]o amount of post-deprivation process will satisfy the requirements of the Due Process Clause where ... a public employee,

subject to dismissal only for just cause, is terminated without oral or written notice of the charges against them, an explanation of the employer's evidence, and an opportunity to present their side of the story prior to their discharge.")

■ In this case, viewing the facts in the light most favorable to Plaintiff, issues of material fact remain regarding the pre-termination procedures Defendants provided to Barrera. Therefore, the Court cannot say that Defendants' pre-termination procedures adequately forewarned Plaintiff and "afforded an opportunity to be heard at a meaningful time and in a meaningful manner," *Cotnoir*, 35 F.3d at 10 (internal quotations omitted), nor can the Court conclude that the pre-termination procedures provided "an initial check against mistaken decisions." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Under these circumstances, Plaintiff's procedural due process claim can only be resolved by a trial on the merits.

2. Qualified Immunity

■ Defendants also argue in their Motion that Catlin is entitled to summary judgment on the basis of qualified immunity. Given the factual dispute, the Court cannot conclude at this point that Defendant Catlin is entitled to qualified immunity. The facts viewed in the light most favorable to the nonmoving party suggest that MedReview told Catlin that Barrera's second test result was negative, although Catlin proceeded to terminate Barrera on grounds that the second test result was positive. The facts also suggest that Catlin did nothing to verify the second test result before terminating Barrera. Moreover, it appears that Catlin did nothing in May of 1999 after definitively determining that Barrera's second test result was negative and that, as a result, Barrera had

been wrongly terminated and denied unemployment benefits. Under these facts, the Court cannot conclude that Catlin's actions were objectively reasonable or that the due process claims against Catlin are barred by qualified immunity. *See Liu v. Phillips*, 234 F.3d 55, 57 (1st Cir.2000) ("Qualified immunity is available to officials who err in their duties so long as the mistake is one that a reasonable [official] could have made, and the standard is favorable to the [official], protecting all but the plainly incompetent or those who knowingly violate the law.") (internal citations and quotations omitted).

### C. Violation of Maine's Drug Testing Statute

Construing the facts in the light most favorable to Plaintiff, the Court finds that there is ample evidence upon which a reasonable jury could find that Defendants terminated Barrera without a "confirmed positive result" in violation of Maine statute. *See* 26 M.R.S.A. § 685(2).

### IV. CONCLUSION

For these reasons, the Court hereby GRANTS Defendants' Motion for Summary Judgment (Docket # 8) as to Counts IV & VI and DENIES the Motion as to Counts I, II, III and V. In addition, the Court GRANTS Plaintiff's Motion to Supplement Summary Judgment Record (Docket # 16).

SO ORDERED.