IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 01-0774
════════════
 
J. M. Davidson, 
Inc.
 
v.
 
Chelsey J. Webster
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Thirteenth District of Texas
════════════════════════════════════════════════════
 
Argued on December 
11, 2002
 
Justice Jefferson delivered the opinion 
of the Court, joined by Chief Justice 
Phillips, 
Justice Hecht, Justice Owen, Justice Wainwright, and Justice Brister.
 
Justice Schneider filed a dissenting 
opinion, joined by Justice O=Neill.
Justice Smith filed a dissenting 
opinion.
This is an 
interlocutory appeal of a trial court=s 
order denying an employer=s 
motion to compel arbitration under the company=s 
alternative dispute resolution policy.  
We recently held that arbitration agreements between an employer and an 
at-will employee are enforceable when there is an agreement that is valid under 
traditional contract principles.  
In re Halliburton Co., 80 S.W.3d 566, 573 (Tex. 2002).  Here, we consider whether an arbitration 
agreement between an employer and an employee is enforceable if the employer 
reserves the unilateral right to modify or terminate personnel policies without 
notice.  The trial court denied the 
employer=s 
motion to compel arbitration, and the court of appeals affirmed.  49 S.W.3d 507.
We conclude 
that the arbitration agreement is ambiguous because it is not possible to 
determine from the document itself whether the unilateral termination right 
applies to the parties= 
agreement to arbitrate, or only to Apersonnel 
policies@ 
concerning the at-will employment relationship.  Accordingly, we reverse the court of 
appeals= 
judgment and remand to the trial court for further proceedings consistent with 
this opinion.
 
I
Background
 
J. M. 
Davidson, Inc. hired Chelsey Webster as a mechanic in 
December  1997.  Soon after, Davidson asked Webster to 
sign a one-page document as a condition of his at-will employment.  Webster signed the document, which 
provided:
 
J.M. Davidson, Inc.
ALTERNATIVE 
DISPUTE RESOLUTION POLICY
EMPLOYMENT 
APPLICATION LANGUAGE
 
I, the 
applicant whose signature is affixed hereto, and the above listed Company, 
(hereinafter referred to as the "Company"), for itself and all of its officers, 
directors, agents and employees, all of which mutually agree and contract that 
any and all claims, disputes or controversies, whether based on the Construction 
[sic], Statutes, Code(s), Ordinances, Rules, Orders Regulations, and/or common 
law of he [sic] United States and/or of any State, and/or all subdivisions, of 
either, and/or asserted on the basis of contract, quasi‑contract, personal 
injury, tort, offenses, quasi‑offenses or otherwise, or arising out of, or in 
any way relating to this application for employment, or any other application 
for employment that I may have previously submitted, or may submit in the 
future, or the Company's decision to hire or not to hire me;  including the arbitrability of any claim, dispute or controversy shall be 
exclusively and finally settled by binding arbitration administered by, 
Conducted [sic] under the Arbitration Rules of, and before the Arbitrator(s) of 
an Arbitration Tribunal of the National Association for Dispute Resolution, 
Inc., pursuant to the provisions of the Federal Arbitration Act and/or any 
applicable Alternative Dispute Resolutions Act, whichever shall have the 
broadest effect, all claims of any rights to the contrary, including any right 
to trail [sic] by jury, being hereby expressly waived.  The Arbitration Tribunal shall be the 
sole and existence [sic] of its jurisdiction over all parties and issues.  Judgment upon any award may be entered 
in any Court B 
State or Federal B 
having jurisdiction.
 
I hereby 
certify that all of the information and statements made or furnished on this 
application are true and correct and I hereby grant the ACompany@ 
permission to verify such information and statements.  I understand that any false statement or 
omission on this application may be considered as sufficient cause for rejection 
of this application, or for dismissal, if such false statement or omission is 
discovered subsequent to my employment.  
I further understand that the ACompany@ 
may perform a pre-employment investigation to determine my suitability for 
employment and I authorize the ACompany@ 
to have access to any and all records concerning my education or employment 
background.  I hereby authorize any 
person or Entity having such information to release same to the ACompany@.  I understand that the pre-employment 
investigation may include contacting my previous employers, and I hereby 
authorize such previous employers to release any and all information relating to 
my employment to the ACompany@.  I understand that if I am extended an 
offer of employment, I will have to pass a physical examination as a condition 
of such employment.  If employed, I 
agree to abide by and comply with all of the rules, policies and procedures of 
the ACompany.@  I understand that if I am employed by 
the ACompany@, 
such employment will be Aat-will@ 
and that the ACompany@ 
may terminate my employment at any time and for any reason.  I understand and agree that, in the 
event of my separation from any employment with the ACompany@, 
any and all information concerning my employment history may be furnished to any 
other employer with whom I seek employment and I hereby release and hold 
harmless the ACompany@, 
its affiliates, parents, subsidiaries, and successors, and its and their 
officers, directors, trustees, employees and agents from and against any and all 
claims and liability for furnishing such information.  No supervisor or person other than the 
President of the "Company", can change or otherwise modify any employment 
agreement.  The "Company" reserves 
the right to unilaterally abolish or modify any personnel policy without prior 
notice.  I understand that this 
application will be considered valid and current for a period of not more than 
thirty (30) days.
 
In November 
1998, Webster was injured at work and subsequently filed a workers= 
compensation claim.  Although his 
condition improved temporarily, his doctor eventually placed him on Ano 
work@ 
status.  Shortly thereafter, 
Webster=s 
employment with Davidson ceased.  
The parties dispute whether Webster quit or was terminated.
Webster sued 
Davidson for wrongful termination under section 451 of the Texas Labor Code, 
alleging he was terminated in retaliation for filing a workers= 
compensation claim.  See 
Tex. Lab. Code ' 
451.001.  Davidson denied 
Webster=s 
allegations and filed a motion to compel binding arbitration under the 
company=s 
alternative dispute resolution policy.  
Webster responded that the arbitration agreement was unenforceable 
because it was illusory, unconscionable, and lacked mutuality.  Following a hearing, the trial court 
denied Davidson=s 
motion without explanation.
Davidson then 
filed an interlocutory appeal seeking to compel arbitration under the Texas 
Arbitration Act, and a mandamus action to compel arbitration pursuant to the 
Federal Arbitration Act.  The court 
of appeals denied the petition for writ of mandamus, held that the arbitration 
agreement was illusory, and affirmed the trial court=s 
order denying Davidson=s 
motion to compel arbitration.  49 
S.W.3d 507, 514.  One justice 
dissented, concluding that the arbitration agreement was enforceable because 
both parties mutually agreed to arbitrate workplace injury disputes.  Id. at 519.  The dissent observed that the 
reservation language C 
concerning the company=s 
unilateral right to modify or terminate personnel policies without notice C 
did not render Davidson=s 
promise illusory, because it was Aseparable@ 
from the promise to arbitrate.  
Id. at 518.
Davidson asks 
us to reverse the court of appeals= 
judgment and order the trial court to stay the trial pending binding arbitration 
pursuant to the Texas Arbitration Act.[1]  See Tex. Civ. Prac. & Rem. Code ' 
171.098.
 
II
Standard of 
Review
 
A party 
attempting to compel arbitration must first establish that the dispute in 
question falls within the scope of a valid arbitration agreement.  In re Oakwood Mobile Homes, Inc., 
987 S.W.2d 571, 573 (Tex. 1999).  If 
the other party resists arbitration, the trial court must determine whether a 
valid agreement to arbitrate exists.  
Id.; Tex. Civ. Prac. & Rem. Code ' 
171.021.  The trial court=s 
determination of the arbitration agreement=s 
validity is a legal question subject to de novo review.  In re Kellogg Brown & Root, 
80 S.W.3d 611, 615 (Tex. App.CHouston 
[1st Dist.] 2002, orig. proceeding).  
If the trial court finds a valid agreement, the burden shifts to the 
party opposing arbitration to raise an affirmative defense to enforcing 
arbitration.  Oakwood, 987 
S.W.2d at 573.
 
III
Analysis
 
Although we 
have repeatedly expressed a strong presumption favoring arbitration, the 
presumption arises only after the party seeking to compel arbitration proves 
that a valid arbitration agreement exists.  
See, e.g., Prudential Secs., Inc. v. 
Marshall, 909 S.W.2d 896, 898 (Tex. 1995); High Valley Homes, Inc. v. 
Fudge, 2003 WL 1882261, at *3 (Tex. App.BAustin 
April 17, 2003, no pet.) (memorandum opinion); see also Fleetwood Enters., 
Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 
2002) (federal policy favoring arbitration does not apply to the determination 
of whether there is a valid agreement to arbitrate; instead, ordinary contract 
principles are applied).  
Arbitration agreements are interpreted under traditional contract 
principles.  Jenkens & Gilchrist v. Riggs, 87 S.W.3d 198, 201 
(Tex. App.BDallas 
2002, no pet.); Pepe Int'l Dev. Co. v. Pub Brewing 
Co., 915 S.W.2d 925, 930 (Tex. App.BHouston 
[1st Dist.] 1996, no writ); see also First Options of Chicago, Inc. v. 
Kaplan, 514 U.S. 938, 944 (1995) (holding that, when deciding whether the 
parties agreed to arbitrate, Acourts 
generally . . . should apply ordinary state-law principles that govern the 
formation of contracts@).  Thus, an employer attempting to enforce 
an arbitration agreement must show the agreement meets all requisite contract 
elements.  At-will employment does 
not preclude formation of other contracts between employer and employee, so long 
as neither party relies on continued employment as consideration for the 
contract.  See Light v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex. 1994) 
(because at-will employer always retains the option to discontinue employment at 
any time, the promise of continued employment is illusory and insufficient 
consideration for employee=s 
promise not to compete).  Here, the 
parties dispute whether the reciprocal promises to arbitrate are sufficient 
consideration to support enforcing the arbitration agreement.
We recently 
considered whether an arbitration agreement between an employer and at-will 
employee was supported by sufficient consideration.  See In re Halliburton Co., 80 
S.W.3d at 566.  We note, however, 
that the court of appeals= 
decision and both parties= 
submissions to this Court occurred before we decided Halliburton.  In Halliburton, the employer 
notified employees of a new  
alternative dispute resolution program that required both the employer 
and the employees to submit all employment-related disputes to binding 
arbitration.  Id. at 
568.  The terms included the 
employer=s 
right to modify or discontinue the program, but also required the employer to 
give its employees notice of changes and stated that any amendments would apply 
only prospectively.  Id. at 
569-70. 
We upheld the 
arbitration agreement between Halliburton and its employee.  Id. at 570.  We concluded that the employee=s 
at-will employment status did not render the agreement illusory because 
Halliburton did not rely on continued employment as consideration for the 
agreement.  Instead, mutual promises 
to submit all employment disputes to arbitration constituted sufficient 
consideration, because both parties were bound to the promises to arbitrate. 
 Id. at 569.
Halliburton=s 
right to modify or terminate the policy did not allow the employer to avoid its 
promise to arbitrate because it was limited by express contract provisions.  Id. at 569-70.  First, the policy stated that any 
changes only applied prospectively to unknown claims.  Id.  And second, if Halliburton terminated 
the policy, such termination required notice and applied to both 
Halliburton=s 
and the employees= 
rights.  Id.  Therefore, Halliburton could not 
avoid its promise to arbitrate by amending or terminating the dispute resolution 
program.  Id.  Because the express terms of the policy 
provided that both the employee and Halliburton were bound to their promises to 
arbitrate, we held the agreement was not illusory.  Id. at 570.  Here, we are asked to decide whether the 
terms of the agreement between Davidson and Webster are distinguishable from 
Halliburton.
Davidson 
argues that its dispute resolution policy is enforceable because, like 
Halliburton, the agreement includes reciprocal promises to waive the right 
to litigation and submit all employment disputes to binding arbitration. 
 See In re Alamo Lumber Co., 
23 S.W.3d 577, 579‑80 (Tex. App.BSan 
Antonio 2000, pet. denied) (ASince 
the parties surrendered their rights to trial by jury, these mutual promises 
supply valid consideration.@).  Thus, Davidson contends there is 
sufficient consideration to support the arbitration agreement.  On the other hand, Webster argues that 
the arbitration agreement is illusory because the express terms of the agreement 
provide that Davidson was not bound by its terms.
It is clear 
that Davidson and Webster Amutually 
agree[d] and contract[ed]@ 
to submit disputes to arbitration.  
At the end of the one-page document containing their agreement, however, 
is the following statement:  AThe 
Company reserves the right to unilaterally abolish or modify any personnel 
policy without prior notice.@  Our resolution of this case depends on 
the relationship between those two provisions.
In construing 
this agreement, we first determine whether it is possible to enforce the 
contract as written, without resort to parol 
evidence.  Deciding whether a 
contract is ambiguous is a question of law for the court.  Coker v. Coker, 650 S.W.2d 391, 
394 (Tex. 1983).  In construing a 
written contract, the primary concern of the court is to ascertain the true 
intentions of the parties as expressed in the instrument.  R & P Enters. v. LaGuarta, Gavrel & Kirk, 
Inc., 596 S.W.2d 517, 518 (Tex. 1980); City of Pinehurst v. Spooner 
Addition Water Co., 432 S.W.2d 515, 518 (Tex. 1968).  To achieve this objective, we must 
examine and consider the entire writing in an effort to harmonize and give 
effect to all the provisions of the contract so that none will be rendered 
meaningless.  Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 158 (Tex. 
1951).  No single provision taken 
alone will be given controlling effect; rather, all the provisions must be 
considered with reference to the whole instrument.  Myers v. Gulf Coast Minerals Mgmt. 
Corp., 361 S.W.2d 193, 196 (Tex. 1962); Citizens Nat'l Bank v. Tex. & 
P. Ry. Co., 150 S.W.2d 1003, 1006 (Tex. 
1941).  A contract is unambiguous if 
it can be given a definite or certain legal meaning.  Columbia Gas Transmission Corp. v. 
New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 
1996).  On the other hand, if the 
contract is subject to two or more reasonable interpretations after applying the 
pertinent rules of construction, the contract is ambiguous, creating a fact 
issue on the parties' intent.  
Id.
In this case, 
we cannot give the arbitration agreement a definite or certain legal meaning 
because it is unclear whether Davidson=s 
unrestricted right to Aunilaterally 
abolish or modify any personnel policies@ 
gives it the right to terminate the arbitration agreement without 
notice.  (Emphasis added.)  Stated more succinctly, is the 
arbitration agreement a Apersonnel 
policy@?
We cannot 
answer this question by reading the agreement=s 
terms.  The agreement is titled 
AAlternative 
Dispute Resolution Policy@ 
on one line, and AEmployment 
Application Language@ 
on the next.  The document addresses 
several issues that refer specifically to the employment application process but 
have no bearing on alternative dispute resolution.  For example, Webster agreed to submit to 
a background check and physical examination.  He promised to abide by company policies 
and acknowledged that his employment was at-will.  The Apersonnel 
policy@ 
language is not in the first paragraph, which contains the promise to arbitrate, 
but appears only in the second paragraph, which discusses these other, unrelated 
employment issues.
In their 
attempt to construe the agreement, the court of appeals= 
justices could not agree on the scope of Davidson=s 
right to terminate the agreement.  
Although silent on ambiguity, the majority held that the Apersonnel 
policy@ 
language permitted Davidson to terminate the arbitration agreement at any 
time.  49 S.W.3d at 514 (AAlthough 
Davidson agreed to submit >any 
and all claims, disputes or controversies= 
arising between it and appellee to arbitration, it 
explicitly retained the absolute right to modify or terminate the policy at any 
time.@).  Conversely, the dissent held that 
Davidson=s 
unilateral right to terminate or modify personnel policies did not affect the 
parties= 
separate agreement to arbitrate; in fact, the dissent noted that A[i]n the event the employer exercised that right [to modify 
or terminate] the employee retained the right to force arbitration on the 
issue.@  Id. at 518 (emphasis added).  If the dissent had interpreted the Apersonnel 
policy@ 
language as applying to the arbitration agreement itself, Webster would not have 
the right to seek arbitration on the issue following termination of the 
arbitration agreement.
The proper 
interpretation of this language is critical.[2]  In Halliburton, we rejected the 
argument that the arbitration agreement at issue was illusory because, among 
other things, it required ten days notice of any modification or termination and 
stated that any such amendment would apply prospectively only.  80 S.W.3d at 569-70.  Thus, we held that AHalliburton 
cannot avoid its promise to arbitrate by amending the provision or terminating 
it altogether.@  Id. at 570.  The termination provision in this case 
does not contain similar limitations.  
Accordingly, we hold that the agreement is ambiguous and must be remanded 
to the trial court to determine what the parties intended by the clause AThe 
>Company= 
reserves the right to unilaterally abolish or modify any personnel policy 
without prior notice.@
We add a 
brief response to the dissents.  The 
proper interpretation of this document has split both the court of appeals and 
this Court.  Justice Smith contends 
the agreement is unambiguous and clearly compels Webster to arbitrate.  Justice Schneider says the agreement is 
unambiguous but clearly illusory.  
We will not reiterate our thoughts on ambiguity, but believe it helpful 
to respond to some of the dissents= 
concerns.  Both dissents assert that 
the title of the document must be considered insofar as it references 
arbitration, but they omit from consideration that portion of the title, and 
contents of the document, that pertain to personnel policies.  Justice Smith determines that the 
document is  Aprimarily 
devoted to setting forth an arbitration policy,@ 
even though arbitration is discussed in only the first paragraph, which 
comprises less than fifty percent of the text (and, as Justice Schneider points 
out, only two of fifteen sentences).  
__ S.W.3d at __.  The 
document is set out in full in this opinion, and we need not belabor the 
point.  Suffice it to say that B 
as evidenced by the multiple disagreements about its meaning among this 
Court=s 
justices B 
the agreement is subject to more than one reasonable interpretation.  Under our precedent, the document is 
ambiguous.  Columbia, 940 
S.W.2d at 589.
Rather than 
follow this precedent, however, Justice Smith would enforce a deeply flawed 
agreement that he admits is Afar 
from a model of precise drafting.@  __ S.W.3d at __.  Indeed, the one-page document is rife 
with grammatical errors, misspellings, and omitted words.  Webster waived his right to Atrail 
by jury,@ 
even for claims Abased 
on the Construction of . . . he United States.@  He also agreed that A[t]he 
Arbitration Tribunal shall be the sole and existence of its jurisdiction over 
all parties and issues,@ 
whatever that means.  While we 
generally favor arbitration agreements, we should not reflexively endorse an 
agreement so lacking in precision that a court must first edit the document for 
comprehension, and then rewrite it to ensure its enforceability.
Justice 
Schneider implies that, because the parties do not contend the agreement is 
ambiguous, we may not hold that it is.  
This is contrary to Texas law.  
See Sage St. Assoc. v. Northdale Constr. Co., 863 S.W.2d 438, 444‑45 (Tex. 1993) (holding 
jury question was presented by ambiguity in construction agreement; a court may 
conclude that a contract is ambiguous even in the absence of such a pleading by 
either party); Coker, 650 S.W.2d at 393 (concluding agreement was 
ambiguous even though both parties asserted property settlement agreement was 
unambiguous and moved for summary judgment); Acadian Geophysical Servs., Inc. v. Cameron, 119 S.W.3d 290, 302 (Tex. 
App.BWaco 
2003, no pet. h.); W.W. Laubach Trust/The 
Georgetown Corp. v. The Georgetown Corp./W.W. Laubach Trust, 80 S.W.3d 149, 155 (Tex. App.BAustin 
2002, pet. denied); Arredondo v. City of Dallas, 79 S.W.3d 657, 667 (Tex. 
App.BDallas 
2002, pet. denied); Z.A.O., Inc. v. 
Yarbrough Drive Ctr. Joint Venture, 50 S.W.3d 531, 540 (Tex.App.BEl 
Paso 2001, no pet.); N. Cent. Oil Corp. v. Louisiana Land & Exploration 
Co., 22 S.W.3d 572, 576 (Tex. App.BHouston 
[1st Dist.] 2000, pet. denied); Curbo v. 
State, 998 S.W.2d 337, 343 (Tex. App.BAustin 
1999, no pet.).
Finally, 
Justice Schneider states that he is reluctant to send this matter back to the 
trial court Abecause 
[he] cannot imagine what such a hearing would look like.@  __ S.W. 3d at __.  It is not necessary to speculate on the 
character of that proceeding:  the 
trial court will conduct an evidentiary hearing to determine the parties= 
intent.  See Anglin, 842 S.W.2d at 269 (noting that, Aif 
the material facts necessary to determine [a motion to compel arbitration] are 
controverted, by an opposing affidavit or otherwise 
admissible evidence, the trial court must conduct an evidentiary hearing to 
determine the disputed material facts@); 
see also Armijo v. Prudential Ins. Co., 72 F.3d 
793, 801 (10th Cir. 1995) (Jenkins, J., concurring) (if arbitration agreement is 
ambiguous Athe 
issue then becomes a factual question, to be decided from external evidence of 
the parties= 
intent, unless only one conclusion can be drawn from the undisputed 
evidence@); 
Montgomery County Cmty. Coll. Dist. v. Donnell, 
Inc., 752 N.E.2d 342, 345 (Ohio Ct. App. 2001) (holding that Aan 
ambiguity in the [arbitration] agreement . . . must be resolved by an 
evidentiary hearing@).
Because we 
cannot discern whether Davidson=s 
unilateral right to terminate Apersonnel 
policies@ 
applies to the agreement to arbitrate, we conclude that the arbitration 
agreement is ambiguous.  We reverse 
the court of appeals= 
judgment and remand this case to the trial court for further proceedings 
consistent with this opinion.  Tex. R. App. P. 60.2(d).
 
Wallace B. Jefferson
Justice
 
 
OPINION 
DELIVERED:         
December 31, 2003
 




[1] Davidson 
has not filed a petition for writ of mandamus with this Court under the Federal 
Arbitration Act, see Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992), and does not 
dispute that the Texas Arbitration Act controls.

[2] We 
note that most courts that have considered this issue have held that, if a party 
retains the unilateral, unrestricted right to terminate the arbitration 
agreement, it is illusory.  Dumais v. Am. Golf Corp., 299 F.3d 1216, 1219 
(10th Cir. 2002) (AWe 
join other circuits in holding that an arbitration agreement allowing one party 
the unfettered right to alter the arbitration agreement=s 
existence or its scope is illusory.@); 
Floss v. Ryan=s 
Family Steak Houses, Inc., 211 F.3d 306, 315-16 (6th Cir. 2000) (arbitration 
agreement was Afatally 
indefinite@  and illusory because employer Areserved 
the right to alter applicable rules and procedures without any obligation to 
notify, much less receive consent from,@ 
other parties) (citing 1 Samuel 
Williston, Contracts ' 
43, at 140 (3d ed. 1957)); Hooters of Am., Inc. v. Phillips, 173 F.3d 
933, 939 (4th Cir. 1999) (arbitration agreement unenforceable in part because 
Hooters, but not employee, could cancel agreement with 30 days notice, and 
Hooters reserved the right to modify the rules Awithout 
notice@; 
[n]othing in the rules even prohibits Hooters from 
changing the rules in the middle of an arbitration proceeding.@); 
Gibson v. Neighborhood Health Clinics, 121 F.3d 1126, 1133 (7th Cir. 
1997) (Cudahy, J., concurring) (promise to arbitrate was illusory in part 
because employer retained the right to change or revoke the agreement Aat 
any time and without notice@); 
Snow v. BE&K Constr. 
Co., 126 F. Supp. 2d 5, 14-15 (D. Maine 2001) (citations 
omitted)(arbitration agreement illusory because employer Areserve[d] 
the right to modify or discontinue [the arbitration] program at any time@; 
ADefendant, 
who crafted the language of the booklet, was trying to >have 
its cake and eat it too.=  Defendant wished to bind its employees 
to the terms of the booklet, while carving out an escape route that would enable 
the company to avoid the terms of the booklet if it later realized the 
booklet=s 
terms no longer served its interests.@); 
Trumbull v. Century Mktg. Corp., 12 F. Supp. 2d 683, 686 (N.D. Ohio 
1998)(no binding arbitration agreement because Athe 
plaintiff would be bound by all the terms of the handbook while defendant could 
simply revoke any term (including the arbitration clause) whenever it 
desired.  Without mutuality of 
obligation, a contract cannot be enforced.@); 
Simpson v. Grimes, 849 So.2d 740, 748 (La. Ct. App. 2003) (arbitration 
agreement lacked mutuality, making it Aunconscionable 
and unenforceable@:  ABy 
retaining the right to modify at will any and all provisions of the agreement in 
question, Argent allows itself an escape hatch from its promise to be similarly 
bound to arbitrate all disputes arising between the parties.  Argent=s 
ability to modify the specific terms of the agreement at will is not shared by 
the potential customer signing the agreement.@); 
In re C&H News Co., No. 13-02-529-CV, 2003 
Tex. App. LEXIS 393 , *11-*12 (Tex. App.BCorpus 
Christi January 16, 2003, orig. proceeding) (employer=s 
right to change, modify, delete, or amend the arbitration agreement Awith 
or without prior notification to employees@ 
made the arbitration agreement illusory).